SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

### State of New Jersey v. Kevin Gamble (A-53-12) (071234)

**Argued May 5, 2014 – Decided July 29, 2014**

**CUFF, P.J.A.D. (temporarily assigned), writing for a unanimous Court.**

In this appeal, the Court considers the validity of a warrantless search of a van and the seizure of a handgun from the van's center console.

At approximately 11:00 p.m. on May 3, 2008, Irvington Police Officers Theodore Bryant and Richard Santiago responded to a dispatch of "shots fired" in a high-crime neighborhood. While patrolling the area, the officers received a second dispatch in response to an anonymous 9-1-1 call reporting an individual seated in a tan van with a gun in his lap. The officers spotted a tan van and parked behind it. They directed a spotlight on the van, then exited the car with their weapons drawn. Bryant saw the occupants moving frantically inside the van, "as if trying to hide something." He approached on the driver's side and ordered the occupants, defendant Kevin Gamble and co-defendant Terrell Wright, to exit the van. Wright did so, but defendant started to and then retreated to the driver's seat. Fearing he might be trying to retrieve a weapon, Bryant struck defendant and pulled him from the van. Finding no weapons on defendant, Bryant began a search of the van. As he entered the vehicle, he noticed the handle of a handgun protruding from the center console. Bryant then heard a commotion and realized defendant was attempting to flee. After subduing and restraining defendant, Bryant informed other officers about the gun, which was retrieved from the van.

Defendant was charged with second-degree unlawful possession of a handgun, third-degree receiving stolen property (the handgun), and third-degree resisting arrest. He moved to suppress the evidence recovered at the scene, arguing that the search was illegal because no exception to the warrant requirement applied. The trial court denied the motion. It found Bryant's testimony credible and held that the totality of the circumstances, including the fighting, defendant's retreat back into the van, and the report of shots fired, created a reasonable suspicion to investigate. Moreover, the court found that the State met its burden because the handgun was in plain view. Defendant pled guilty to second-degree unlawful possession of a weapon and third-degree resisting arrest and was sentenced to the statutory minimum of three year's imprisonment with a three-year period of parole ineligibility.

Defendant appealed, and the Appellate Division reversed his conviction. The panel found that no exception to the warrant requirement permitted the search of the van and the seizure of the handgun. It concluded that, although the totality of the circumstances may have provided police with a suspicion that criminal activity was afoot, reasonable suspicion sufficient to support a stop required more. Thus, the panel determined that the protective frisk was not permissible and that, since there was no evidence demonstrating that Bryant saw the handgun in the console prior to entering the van, the plain view exception to the warrant requirement was inapplicable. The Court granted the State's petition for certification. 213 N.J. 389 (2013).

**HELD:** Under the totality of the circumstances, which provided the officers with a reasonable and articulable suspicion that defendant was engaged in criminal activity, the investigatory stop and protective sweep of the passenger compartment of the van were valid.

1. Appellate review of a decision on a motion to suppress requires courts to uphold the factual findings underlying the decision so long as they are supported by sufficient credible evidence in the record. Reviewing courts should only reverse when the trial court's decision is so clearly mistaken as to require intervention in the interests of justice. A trial court's interpretation of the law and the consequences that flow from established facts are not entitled to special deference and are reviewed de novo. (p. 11)

2. The right to be free from unreasonable searches and seizures is guaranteed by the Fourth Amendment to the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution. A warrantless search is presumed invalid unless it falls within one of the recognized exceptions to the warrant requirement, such as the plain view exception. Law enforcement officers also are permitted to conduct a limited protective sweep of a residence when necessary for safety reasons, even absent probable cause to arrest. Such sweeps are only permissible when officers are in the private premises for a legitimate purpose and possess a reasonable articulable suspicion that the area to be swept contains a dangerous individual. Similarly, officers may conduct protective sweeps of the passenger compartment of a vehicle based on a reasonable belief that it contains potentially dangerous weapons. (pp. 11-14)

3. In many instances, the circumstances culminating in a protective sweep commence with an investigatory stop. Both require a reasonable articulable suspicion that the person to be frisked or the area to be searched pose a danger to the officer. Specifically, police may conduct a brief, investigatory stop if there is reasonable suspicion that the person being stopped is engaged, or is about to engage, in criminal activity. This must be based on specific and articulable facts, as well as rational inferences from those facts, that reasonably lead the officer to believe the suspect is dangerous and may gain immediate control of weapons. Reasonable suspicion may not be solely based on a mere hunch or an anonymous tip. However, where an anonymous tip is conveyed through a 9-1-1 call and contains sufficient information to trigger public safety concerns and to provide an ability to identify the person in question, police may undertake an investigatory stop based on that information. Other factors that may give rise to reasonable suspicion include nervousness and furtive gestures combined with other objective facts, additional evasive action, lying to police, and the lateness of the hour. When an investigatory stop is permissible, officers may also frisk the individual. (pp. 14-20)

4. The Court finds that the totality of the circumstances created sufficient reasonable suspicion to justify the investigatory stop of the van. Specifically, two anonymous calls were reported on the night in question, at least one of which was placed through the 9-1-1 system. The tipster identified the vehicle's color, type, and approximate location, all of which were corroborated by officers on the scene. When officers illuminated the vehicle, they observed behavior consistent with an attempt to hide a prohibited item. These furtive gestures, the location of the van, the late hour, and the 9-1-1 calls combined to create a reasonable suspicion sufficient to justify an investigatory stop. (pp. 20-21)

5. As for the legality of the subsequent frisk of the occupants and search of the van, the Court explains that the totality of the circumstances justifying the investigatory stop may also provide an officer with a specific and particularized reason to believe a suspect is armed. Here, in addition to those circumstances warranting the stop, defendant balked at Bryant's direction to exit the van. His retreat created the reasonable suspicion that he was dangerous and could gain immediate access to a weapon, specifically the handgun reported in the 9-1-1 call. The officers' reasonable concerns for their safety and the safety of others did not evaporate when they failed to find a weapon on defendant or Wright. Rather, defendant's behavior enhanced the officers' suspicion that there was a gun in the van that would be within either occupant's easy reach once they returned to the vehicle. Accordingly, Bryant conducted a permissible, narrowly confined visual sweep of the passenger compartment, which revealed a handgun protruding from the center console. Since this search was a permissible protective sweep, the Court declines to address the applicability of the plain view exception. (pp. 21-23)

6. The Court finds that the initial investigatory stop of the van was justified under the totality of the circumstances. Similarly, the officers' decision to conduct a protective sweep of the van was constitutionally permissible. Since no one factor was determinative, the Court need not consider whether the 9-1-1 calls alone were sufficient to create a reasonable suspicion of criminal activity. Rather, the totality of the circumstances provided the requisite reasonable and articulable suspicion that defendant was engaged in criminal activity, which permitted the investigatory stop and the protective sweep of the van. (pp. 23-25)

The judgment of the Appellate Division is **REVERSED**.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, PATTERSON, and FERNANDEZ-VINA; and JUDGE RODRÍGUEZ (temporarily assigned) join in JUDGE CUFF's opinion.**

2

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

       v.

KEVIN GAMBLE,

    Defendant-Respondent.

Argued May 5, 2014 – Decided July 29, 2014

On certification to the Superior Court,
Appellate Division.

Frank Muroski, Deputy Attorney General,
argued the cause for appellant (John J.
Hoffman, Acting Attorney General, attorney;
Mr. Muroski and Brian J. Uzdavinis, Deputy
Attorney General, on the briefs).

Susan Brody, Deputy Public Defender II,
argued the cause for respondent (Joseph E.
Krakora, Public Defender, attorney).

JUDGE CUFF (temporarily assigned) delivered the opinion of the Court.

This appeal involves the validity of a warrantless search of a van and the seizure of a handgun from the van's center console. The initial investigatory stop, the subsequent frisk of the occupants, and the protective search of the passenger compartment of the van were precipitated by two late night anonymous calls to police. The first reported "shots fired";

the second reported an individual seated in a van with a gun on his lap. Both calls identified a location that was well-known to the responding police officers as a high-crime area.

The entry into the passenger compartment of the van by one of the responding officers occurred after police located the vehicle and observed frantic movements by its occupants. When ordered to exit the vehicle, the driver started to leave and then balked. After the driver was forcibly removed by an officer, he was frisked. No weapon was found on him or his passenger. As the officer returned to inspect the interior of the van, he observed the handle of a gun protruding from the center console of the van and almost simultaneously heard a commotion caused by the driver's attempt to flee. The gun was seized by another officer after the driver was subdued, restrained, and placed in a police car.

The totality of the circumstances -- specifically the 9-1-1 calls, the late hour, the location of the van, the frantic movements of the occupants, and the hesitancy of the driver to leave the van -- permitted the responding police officers to form a reasonable suspicion that either one or both of the occupants of the van were armed or that a weapon would be found in the vehicle. The frisk of both occupants failed to produce a weapon. That finding underscored the need to inspect the interior of the vehicle to make sure it did not contain a weapon

2

before the driver and passenger re-entered the van.  Under the totality of the circumstances, we conclude that the officers conducted a valid investigatory stop, <u>Terry</u>[1] frisk, and protective sweep of the passenger compartment of the van.

                              I.

We derive the facts from the evidentiary hearing held in response to defendant's motion to suppress.  On May 3, 2008, at approximately 11:00 p.m., Irvington Police Officers Theodore Bryant and Richard Santiago responded to a dispatch of "shots fired" in the area of Chancellor and Union Avenues, a high-crime neighborhood.  While patrolling the area, the officers received another dispatch in response to an anonymous 9-1-1 call reporting an individual seated in a tan van with a gun in his lap.  No other information was given.

The officers soon spotted a tan van parked on Chancellor Avenue.  The officers parked their vehicle behind the van and directed a spotlight on it, then exited their vehicle with their weapons drawn.  Officer Bryant could see the occupants moving frantically inside the vehicle, "as if trying to hide something."  He approached on the driver's side and ordered the occupants, later identified as defendant Kevin Gamble and co-

---

[1] <u>Terry v. Ohio</u>, 392 <u>U.S.</u> 1, 21, 88 <u>S. Ct.</u> 1868, 1880, 20 <u>L. Ed.</u> 2d 889, 906 (1968).

defendant Terrell Wright, to exit the vehicle. At this point, Officer Bryant did not see a gun in the van.

Wright, the front-seat passenger, exited as instructed. As Officer Bryant approached, defendant began to exit and then retreated to the driver's seat. Bryant testified that he feared defendant might be trying to retrieve a weapon. He struck defendant and pulled him from the vehicle. Bryant frisked defendant for weapons. Finding none, he transferred defendant to a responding backup officer.[2]

Officer Bryant then returned to the vehicle to search its interior. Bryant testified that he observed the handle of a handgun protruding from the van's middle console "as he entered the vehicle." At that point, Bryant heard a commotion and realized that defendant was trying to flee. Bryant exited the van, subdued and restrained defendant, placed him into a police vehicle, and notified other officers that there was a handgun inside the van. In addition to retrieving the handgun from the van, police recovered shell casings at the scene.

Janelle Johnson, defendant's fiancée, testified for defendant. Johnson, the owner of the van, observed parts of the incident from her apartment window across the street. She testified that she heard someone yelling "get out the car, get

---

[2] The record does not reveal whether the passenger was frisked. The arguments of both parties suggest that he was frisked and no weapon was found.

4

out the car," and saw lights.  Johnson looked out the window and saw police surround the van with their guns drawn.  Johnson went outside and saw defendant lying on the ground.  From the other side of the street, she observed a police officer inside the van "go straight towards the middle of the car and yank the console out," and remove a handgun.  Johnson did not know where the handgun came from or how it got inside the van.

## II.

### A.

Defendant was charged with second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b); third-degree receiving stolen property (the handgun), N.J.S.A. 2C:20-7; and third-degree resisting arrest, N.J.S.A. 2C:29-2(a)(3)(a).

Defendant filed a motion to suppress the evidence recovered at the scene, arguing that the search was illegal because no exception to the warrant requirement applied.  The State contended that the search was reasonable under the automobile exception to the warrant requirement, maintaining that there was probable cause to believe there were weapons in the vehicle and that exigent circumstances existed when defendant broke free and attempted to flee from the officers.  The State argued that, even if the circumstances did not establish probable cause, the officers had reasonable suspicion to justify a protective search of the vehicle.  Alternatively, the State maintained that the

5

search was permissible under the plain view exception to the warrant requirement.

The motion court denied defendant's motion to suppress. The court credited Johnson's testimony, but found Officer Bryant's testimony more credible. The motion court held that the totality of the circumstances, including "the fighting, the fact that one individual tried to retreat back into the car, the corroboration of the handgun being found, and in connection with a call, which indicated shots fired," created a reasonable suspicion to investigate, and further held that the State had met its burden because the weapon was in plain view of the officer.

Following the denial of his motion to suppress, defendant pled guilty to second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b), and third-degree resisting arrest, N.J.S.A. 2C:29-2(a)(3)(a), pursuant to a negotiated plea agreement. The court sentenced defendant to the statutory minimum of three years' imprisonment with a three-year period of parole ineligibility.

B.

Defendant appealed, arguing that the trial court erred in applying the plain view exception. He further contended that no other exception to the warrant requirement applied to the search of the van. The State maintained that the handgun was seized in

plain view during a lawful investigative stop, and even if it was not in plain view, it was properly seized during a limited protective search of the van that was reasonable under the totality of circumstances.

The Appellate Division reversed defendant's conviction, concluding that no exception to the warrant requirement permitted the search of the van and the seizure of the handgun. The appellate panel held that, although the totality of the circumstances and evidence may have given the police officer a suspicion or a hunch that criminal activity was afoot, reasonable suspicion to support a stop demanded more. The panel concluded that defendant's furtive movements, accompanied only by a report of individuals with a gun in a tan van and defendant's attempts to re-enter the van, were not enough to support a reasonable belief that defendant was dangerous and that the vehicle might contain a weapon accessible to defendant or his passenger. Accordingly, the panel held that the protective frisk was not permissible. Further, the panel found that there was no evidence in the record demonstrating the officer viewed the handgun in the console prior to entering the van. Therefore, because the officer was not lawfully in the viewing area, the plain view exception was not applicable. The panel also rejected the application of the automobile exception to the warrant requirement.

7

The State filed a petition for certification, which this Court granted.  State v. Gamble, 213 N.J. 389 (2013).

### III.

### A.

The State argues that the search of the van was justified either as a limited protective frisk or as a plain view seizure.[3] First, the State maintains that the totality of the circumstances, specifically, the 9-1-1 calls, the location of the van, and the frantic movements of the occupants, created sufficient reasonable suspicion to justify an investigatory stop.  Second, the State contends that these factors, together with the driver's attempt to re-enter the van and the fact that the occupants of the van would have been allowed to re-enter after the stop, created sufficient reasonable suspicion to justify a limited vehicle protective frisk.

The State points to the recent United States Supreme Court decision in Navarette v. California, 572 U.S. __, __, 134 S. Ct. 1683, 1689-90, 188 L. Ed. 2d 680, 688-89 (2014), where the Supreme Court held that the use of the 9-1-1 emergency system was an "indicator of veracity," because its safeguards and features permit identification of callers.  The State contends that Navarette supports its position that the anonymous 9-1-1

---

[3] The State no longer argues that the automobile exception to the warrant requirement applied in this case.

8

calls can provide reasonable suspicion.  The State also invokes State v. Golotta, 178 N.J. 205, 219 (2003) to support its assertion that New Jersey courts treat anonymous 9-1-1 calls as more reliable than other anonymous tips.  The State further distinguishes this case from Florida v. J.L., 529 U.S. 266, 274, 120 S. Ct. 1375, 1380, 146 L. Ed. 2d 254, 262 (2000), where the Supreme Court held that the Fourth Amendment did not allow a frisk of a young man at a bus stop based only on an anonymous tip that he had a gun.  Here, the State contends the calls concerned a person with a weapon in a high-crime area and reports that shots had been fired.

In its discussion of the plain view exception, the State contends this Court should abandon the inadvertence requirement. The State also maintains that the evidence adduced at the suppression hearing supports the trial court's finding that the officer was lawfully at the threshold of the van's open door when he saw the gun, and therefore, the plain view exception to the warrant requirement applies here.

B.

Defendant maintains that the handgun was not in plain view, that the protective frisk theory is inapplicable to motor vehicles, and that the search was not lawful on any other basis. Therefore, defendant asserts that the Appellate Division correctly reversed the denial of the motion to suppress.

Addressing plain view, defendant asserts that there is no support for the State's theory that the officer saw the weapon before he entered the vehicle. Defendant maintains that even if the officer was lawfully in the van at the time he saw the gun, the plain view exception would not apply because the officer did not discover the gun inadvertently; rather, he entered the van with the express purpose to find it.

Defendant also argues that the search was not permissible as a limited protective frisk. Defendant maintains that the record does not support the State's contention that it was the officer's intention to limit his inquiry to the center console. Defendant contends that the totality of circumstances in this case did not justify a protective frisk pursuant to the factors articulated by this Court in State v. Lund, 119 N.J. 35, 48 (1990). He insists that there was no ongoing emergency when the officers confronted the individuals in the van, and there was insufficient evidence to support a reasonable suspicion that defendant was armed and dangerous. Defendant further argues that he did not pose a threat to officer safety at the time of the search, as he had been placed under arrest. Finally, defendant maintains that no other exception to the warrant requirement applies because there was neither exigency nor probable cause to justify the search.

IV.

A.

Appellate courts reviewing a grant or denial of a motion to suppress must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record. State v. Elders, 192 N.J. 224, 243 (2007). Deference to these factual findings is required because those findings "are substantially influenced by [an] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Johnson, 42 N.J. 146, 161 (1964). Thus, appellate courts should reverse only when the trial court's determination is "so clearly mistaken 'that the interests of justice demand intervention and correction.'" Elders, supra, 192 N.J. at 244 (quoting Johnson, supra, 42 N.J. at 162).

A trial court's interpretation of the law, however, and the consequences that flow from established facts are not entitled to any special deference. State v. Gandhi, 201 N.J. 161, 176 (2010); Manalapan Realty v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). Therefore, a trial court's legal conclusions are reviewed de novo. Gandhi, supra, 201 N.J. at 176.

B.

The Fourth Amendment to the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution guarantee the right of people to be secure against unreasonable searches

11

and seizures.  U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7. Constitutional protections prohibiting unreasonable searches and seizures "impose a standard of reasonableness on the exercise of discretion by government officials to protect persons against arbitrary invasions."  State v. Maristany, 133 N.J. 299, 304 (1993).  Reasonableness is the "touchstone" of the Fourth Amendment.  State v. Crumb, 307 N.J. Super. 204, 245 (App. Div. 1997), certif. denied, 153 N.J. 215 (1998).

"A warrantless search is presumed invalid unless it falls within one of the recognized exceptions to the warrant requirement."  State v. Cooke, 163 N.J. 657, 664 (2000).  The State bears the burden of proving that the warrantless search is justified by one of those exceptions.  State v. Bogan, 200 N.J. 61, 73 (2009).  Evidence seized when found in plain view is one exception.  State v. Mann, 203 N.J. 328, 340-41 (2010). Warrantless vehicle searches in New Jersey are also sustainable either under the "'automobile exception' on the basis of probable cause, or in connection with a search for weapons based on an objectively-reasonable belief that an occupant of the vehicle is dangerous and may gain access to weapons."  State v. Pierce, 136 N.J. 184, 205 (1994).

An exception to the warrant requirement relevant to the facts here is the protective sweep.  The United States Supreme Court in Maryland v. Buie, 494 U.S. 325, 327, 110 S. Ct. 1093,

12

1094, 108 L. Ed. 2d 276, 281 (1990), authorized law enforcement officers to conduct a limited "protective sweep" of a residence when necessary for safety reasons.  The Court described a protective sweep as "a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others[,] . . . narrowly confined to a cursory visual inspection of those places in which a person might be hiding."  Ibid.

In State v. Davila, 203 N.J. 97, 116 (2010), this Court analyzed the application of Buie in situations where the protective sweep of a residence occurred when officers were lawfully present in a home for some purpose other than to effect an arrest.  The Court concluded that the absence of probable cause to arrest did not render a protective sweep per se illegal.  Id. at 121.  However, the Court directed that an inquiry must be made into the circumstances justifying the sweep.  Id. at 125.  A protective sweep of a home may only occur when

> (1) law enforcement officers are lawfully within the private premises for a legitimate purpose, which may include consent to enter; and (2) the officers on the scene have a reasonable articulable suspicion that the area to be swept harbors an individual posing a danger.  Where those substantive conditions are met, as a matter of procedure, the sweep will be upheld only if (1) it is cursory, and (2) it is limited in

13

> scope to locations in which an individual could be concealed.
>
> [_Ibid._]

The Court emphasized that the justification for a limited protective sweep is the "serious concern for officer safety when articulable facts are present that justify taking [such a] precaution," and noted that the Supreme Court decisions in _Terry_ and _Long_[4] relied on a similar rationale. _Id._ at 117.

In _Michigan v. Long_, 463 _U.S._ 1032, 1034-35, 103 _S. Ct._ 3469, 3473, 77 _L. Ed._ 2d 1201, 1210 (1983), the United States Supreme Court held that police may conduct a "protective search of the passenger compartment" of a vehicle based on a reasonable belief "that the vehicle contain[s] weapons potentially dangerous to the officers." _See also_ _Lund_, _supra_, 119 _N.J._ at 40 ("[I]n _Michigan v. Long_, the Court upheld the right of police to conduct a weapons search of the interior of a car when they have a reasonable belief that the motorist is potentially dangerous."). In _Lund_, _supra_, this Court adopted the rule in _Long_ to govern protective searches of automobiles based on reasonable suspicion. 119 _N.J._ at 48.

Encounters between private citizens and police may take many forms. In the law enforcement context, the most common are the field inquiry, the investigatory stop, the stop and frisk,

---

[4] _Michigan v. Long_, 463 _U.S._ 1032, 103 _S. Ct._ 3469, 77 _L. Ed._ 2d 1201 (1983).

14

the protective sweep of a residence or vehicle, and the search of a person, vehicle, or premises. See State v. Rodriguez, 172 N.J. 117, 125-27 (2002). Each is governed by a different standard, ibid., and circumstances of an encounter between a private citizen and police may evolve quickly, thereby progressing rapidly from a simple field inquiry to a search, see State v. Sirianni, 347 N.J. Super. 382, 388 (App. Div.), certif. denied, 172 N.J. 178 (2002).

Here, as in many instances, the circumstances that culminated in a protective sweep of a house or vehicle commenced with an investigatory stop. As detailed in Davila, supra, the investigatory stop and the protective sweep require a reasonable articulable suspicion that the person to be frisked or the area to be swept poses a danger to the officer. 203 N.J. at 125-26.

Police may conduct a brief, investigatory stop, sometimes called a Terry stop, if there is reasonable suspicion that the person being stopped is engaged, or is about to engage, in criminal activity. State v. Nishina, 175 N.J. 502, 510-11 (2003). Reasonable suspicion to justify such a stop must be "based on specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." Long, supra, 463 U.S. at 1049, 103 S. Ct. at 3480, 77 L. Ed. 2d at 1220

15

(internal quotation marks omitted); see Lund, supra, 119 N.J. at 39.  Although a mere "hunch" does not create reasonable suspicion, Terry, supra, 392 U.S. at 27, 88 S. Ct. at 1883, 20 L. Ed. 2d at 909, the level of suspicion required is "considerably less than proof of wrongdoing by a preponderance of the evidence," and "obviously less" than is necessary for probable cause, United States v. Sokolow, 490 U.S. 1, 7, 109 S. Ct. 1581, 1585, 104 L. Ed. 2d 1, 10 (1989).

"[A]n anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity."  Alabama v. White, 496 U.S. 325, 329, 110 S. Ct. 2412, 2415, 110 L. Ed. 2d 301, 308 (1990).  That is because "ordinary citizens generally do not provide extensive recitations of the basis of their everyday observations," and an anonymous tipster's veracity is "by hypothesis largely unknown, and unknowable."  Ibid. (internal quotation marks omitted).

J.L. illustrates the shortcomings of anonymous reports of criminal activity.  In J.L., supra, 529 U.S. at 268-69, 120 S. Ct. at 1377-78, 146 L. Ed. 2d at 258-59, the Supreme Court determined that no reasonable suspicion arose from a bare-bones tip that a young black male in a plaid shirt standing at a bus stop was carrying a gun.  The tipster did not explain how he knew about the gun, nor did he suggest that he had any special familiarity with the young man's affairs.  Id. at 271, 120 S.

Ct. at 1379, 146 L. Ed. 2d at 260. As a result, police had no basis for believing "that the tipster ha[d] knowledge of concealed criminal activity." Id. at 272, 120 S. Ct. at 1379, 146 L. Ed. 2d at 261. Furthermore, the tip included no predictions of future behavior that could be corroborated to assess the tipster's credibility. Id. at 271, 120 S. Ct. at 1379, 146 L. Ed. 2d at 260. Accordingly, the tip was insufficiently reliable to justify a stop and frisk. Ibid.

Similarly, in Rodriguez, supra, this Court held that police impermissibly detained a man based on nothing more than an anonymous call from a man that two men would be arriving by bus in Atlantic City carrying drugs purchased in Philadelphia. 172 N.J. at 131. We determined that an investigatory stop required more than an accurate description of the defendant and an accurate prediction of his mode of transportation. Ibid.

On the other hand, when the anonymous tip is conveyed through a 9-1-1 call and contains sufficient information to trigger public safety concerns and to provide an ability to identify the person, a police officer may undertake an investigatory stop of that individual. This Court has previously treated an anonymous 9-1-1 call as more reliable than other anonymous tips. In Golotta, supra, 178 N.J. at 209, this Court held that an investigative stop of a vehicle was allowable based on an anonymous 9-1-1 call reporting reckless driving.

The caller identified the color of the truck, its license plate number, and its direction. Ibid. An officer observed a vehicle matching that description as to all but the last letter of the license plate. Id. at 223-24. The Court concluded that the stop was permissible for three reasons: (1) the "enhanced reliability" of 9-1-1 calls, (2) the fact that only a temporary stop of the vehicle was involved and not a search of the vehicle or arrest of the driver, and (3) the "significant risk of death or injury to himself or the public" posed by an intoxicated or erratic driver. Id. at 218.

Recently, in Navarette, supra, 572 U.S. at __, 134 S. Ct. at 1690-91, 188 L. Ed. 2d at 689-91, the Supreme Court favorably referred to Golotta, and used a similar rationale in holding that an anonymous 9-1-1 call claiming eyewitness knowledge of dangerous driving contained sufficient indicia of reliability. The Court determined that an anonymous 9-1-1 call in which the caller claimed eyewitness knowledge of dangerous driving indicative of intoxication had sufficient indicia of reliability, considering the short time between the reported incident and the 9-1-1 call and the technological and regulatory features of the 9-1-1 system which safeguard against false reports. Id. at __, 134 S. Ct. at 1689-91, 188 L. Ed. 2d at 689-91.

Other factors may also give rise to reasonable suspicion. In Lund, supra, we recognized that "[n]ervousness and furtive gestures may, in conjunction with other objective facts, justify a Terry search." 119 N.J. at 47. Other factors that may combine with furtive movements to give rise to reasonable suspicion include "additional evasive action, lying to the police, the presence of other incriminating information about the motorist or occupants of the car, the absence of identification, and even the lateness of the hour." Id. at 48; see also State v. Citarella, 154 N.J. 272, 279-80 (1998) (finding suspect's movements and gestures, presence of incriminating information about vehicle or occupants, and time and place of encounter can create reasonable suspicion necessary to justify search); State v. Daniels, 264 N.J. Super. 161, 167 (App. Div. 1993) (holding furtive movements of reaching under seat and towards console, plus denial of movements, plus reasonable belief car was stolen created reasonable concern for safety sufficient to justify protective search).

When a police officer forms a reasonable and articulable suspicion to justify an investigatory stop, the officer may also conduct a patdown or frisk of the outer clothing of such persons in an attempt to discover weapons. Terry, supra, 392 U.S. at 30-31, 88 S. Ct. at 1884-85, 20 L. Ed. 2d at 911; State v. Privott, 203 N.J. 16, 30 (2010).

19

V.

With those principles in mind, we turn to the facts of this case.

A.

The first issue before this Court concerns whether there was a reasonable suspicion to justify the initial stop of the van. The standard takes into account "the totality of the circumstances -- the whole picture." United States v. Cortez, 449 U.S. 411, 417, 101 S. Ct. 690, 695, 66 L. Ed. 2d 621, 629 (1981).

In this case, the State maintains that the totality of circumstances, specifically the 9-1-1 calls, the location of the van in a high-crime neighborhood late at night, and the frantic movements of the occupants, created sufficient reasonable suspicion to justify an investigatory stop. We agree. Two anonymous calls were reported on the night in question. One call reported shots fired in the area around Chancellor and Union Avenues in Irvington; the other reported a person seated in a tan van parked on Chancellor Avenue with a gun in his lap. At least one, if not both, of the calls was placed through the 9-1-1 system. Although the tipster did not inform officers how he or she knew about the gun, the tip identified the vehicle's color, type, and approximate location. Police officers were

20

able to corroborate the tip by finding a tan van at the reported location.

Additionally, once the officers located the vehicle, they did not immediately approach it.  Their suspicion was not based solely on the anonymous 9-1-1 call.  The officers illuminated the van with a spotlight, which permitted them to observe behavior consistent with an attempt to hide a prohibited item.  These furtive gestures, the location of the van, the late hour, combined with the 9-1-1 calls, created a reasonable suspicion sufficient to justify an investigatory stop of the vehicle.

B.

Having determined that there was reasonable suspicion justifying the initial stop of the van, we now turn to the legality of the subsequent frisk of the occupants and search of the vehicle.  An officer lawfully stopping a vehicle may conduct a protective frisk of the passenger compartment if he has a reasonable suspicion that the individual is dangerous and may gain immediate access to weapons.  Long, supra, 463 U.S. at 1049, 103 S. Ct. at 3481, 77 L. Ed. 2d at 1220; Lund, supra, 119 N.J. at 48.  This involves "balancing the State's interest in effective law enforcement against the individual's right to be free from unwarranted and/or overbearing police intrusions." State v. Caldwell, 158 N.J. 452, 459 (1999).  That determination is fact-sensitive and requires consideration of whether the

21

totality of the circumstances provided the officer with an articulable and particularized suspicion that the individual was involved in criminal activity, within the context of the officer's relative experience and knowledge. State v. Arthur, 149 N.J. 1, 7-8 (1997). The same circumstances which justify an investigatory stop may also present the officer with "a specific and particularized reason to believe that the suspect is armed." Privott, supra, 203 N.J. at 30.

In addition to the totality of the circumstances that warranted the investigatory stop, defendant balked at Officer Bryant's direction to exit the car. Defendant's retreat to the driver's seat as Officer Bryant got closer created a reasonable suspicion that defendant was dangerous and could gain immediate access to a weapon, specifically the handgun that had been reported in the 9-1-1 call. Terry, supra, 392 U.S. at 30-31, 88 S. Ct. at 1884-85, 20 L. Ed. 2d at 911; Privott, supra, 203 N.J. at 30.

After Officer Bryant completed the patdown of defendant and did not find a weapon, he returned to the car to conduct a search of the interior of the vehicle. He did so only after a frisk of defendant and his passenger revealed that neither carried a weapon. Yet, their conduct, particularly defendant's conduct, enhanced, rather than allayed, the officers' concern that there was a weapon in the van. The officers' reasonable

22

suspicion that there was a gun in the van that would be within easy reach when defendant and his passenger returned to the vehicle, and the officers' reasonable concerns for their safety and the safety of others did not evaporate when they failed to find a weapon on either defendant or his passenger.  The risk to officers and public safety, which underpinned this Court's holding in Davila, is equally present here.  While the protective sweeps in Buie and Davila were aimed at protecting officers from danger that may be encountered in a home from individuals lurking therein, this rationale applies equally to limited protective searches of vehicles, where officers are permitted to "ferret out weapons that might be used against police officers."  Davila, supra, 203 N.J. at 129.  The sweep, however, must be cursory and limited in scope to the location where the danger may be concealed.  Here, the narrowly confined visual sweep of the passenger compartment, which revealed a handgun protruding from the center console, was permissible.

C.

As the search was a permissible protective sweep of the passenger compartment of the vehicle, we need not discuss the applicability of the plain view exception to the facts here.

VI.

We therefore conclude that the initial investigatory stop of the vehicle was justified under the totality of the

23

circumstances.  Similarly, the officers' decision to conduct what can best be characterized as a protective sweep or frisk of the van was constitutionally permissible.

No one factor was determinative.  Here, there was a confluence of factors, including the 9-1-1 calls reporting gunshots and an individual with a gun, the late hour, the location of the van in a high-crime area, and the furtive movements of the van's occupants when the officers arrived on the scene and as they approached the vehicle.  While the United States Supreme Court and this Court have held that anonymous 9-1-1 calls alone may contain sufficient indicia of reliability in certain situations, notably reports of intoxicated driving, see Navarette, supra, 572 U.S. at __, 134 S. Ct. at 1690-91, 188 L. Ed. 2d at 689-90; Golotta, supra, 178 N.J. at 209, we need not determine here whether the anonymous 9-1-1 calls alone were sufficient to create a reasonable suspicion of criminal activity.  Based on the totality of the circumstances, once the officer completed the patdown of defendant and did not locate the gun, it was reasonable for the officer to believe the van contained a gun.  To permit defendant and his passenger to re-enter the van before ensuring that it did not contain a weapon ignores the risk to officers and public safety.

In sum, the 9-1-1 calls were simply one piece of the puzzle.  The totality of all the circumstances provided the

24

officers with a reasonable and articulable suspicion that the individuals were involved in criminal activity and thus permitted the investigatory stop and the protective sweep of the van.

VII.

The judgment of the Appellate Division is, therefore, reversed.

CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, PATTERSON, and FERNANDEZ-VINA; and JUDGE RODRÍGUEZ (temporarily assigned) join in JUDGE CUFF's opinion.

25

SUPREME COURT OF NEW JERSEY

NO. ___A-53___                          SEPTEMBER TERM 2012

ON CERTIFICATION TO _____Appellate Division, Superior Court_____


STATE OF NEW JERSEY,

      Plaintiff-Appellant,

          v.

KEVIN GAMBLE,

      Defendant-Respondent.


DECIDED _____July 29, 2014_____
_____Chief Justice Rabner_____ PRESIDING

OPINION BY _____Judge Cuff_____

CONCURRING/DISSENTING OPINIONS BY _____

DISSENTING OPINION BY _____

| CHECKLIST | REVERSE | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUDGE RODRÍGUEZ (t/a) | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 7 | |

1