**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3816-17T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

HANIF THOMPSON, a/k/a
HAQUIR THOMPSON, BOBBIE
WILSON, HANIF THOMAS,
HANIF L. THOMPSON, HANIF
TAYLOR, BOBBY WILSON,
BODDY WILSON, and
JAROD HOPKINS,

     Defendant-Appellant.

_____

Submitted March 10, 2020 – Decided April 21, 2020

Before Judges Hoffman and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 14-09-2285.

Joseph E. Krakora, Public Defender, attorney for appellant (Michele A. Adubato, Designated Counsel, on the brief).

Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Frank J. Ducoat, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Hanif Thompson appeals from the November 20, 2015 Law Division order denying his motion to suppress evidence obtained with a search warrant without a Franks[1] hearing. We affirm.

In September 2014, an Essex County grand jury returned Indictment Number 14-09-2285, charging Basim Henry, Karif Ford, Kevin Roberts, and defendant with second-degree conspiracy to commit carjacking, N.J.S.A. 2C:5-2, 2C:15-2(a) (count one); first-degree carjacking, N.J.S.A. 2C:15-2(a)(2) (count two); first-degree felony murder, N.J.S.A. 2C:11-3(a)(3) (count three); first-degree murder, N.J.S.A. 2C:11-3(a)(1) (count four); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (count five); and, second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count six). On the same day, an Essex County grand jury returned Indictment Number 14-09-2289, charging defendant with second-degree certain persons not to possess weapons, N.J.S.A. 2C:39-7(b).

---

[1] Franks v. Delaware, 438 U.S. 154 (1978).

A-3816-17T3

Prior to trial, all four defendants unsuccessfully moved to suppress evidence. Pursuant to N.J.R.E. 404(b), the State moved to admit evidence of defendants' conduct three days before the day of the crimes charged. Judge Michael L. Ravin granted the State's Rule 404(b) motion.

After a jury convicted Henry on all counts, and the court sentenced him to life imprisonment plus ten years, defendant pleaded guilty to first-degree felony murder and second-degree possession of a weapon without a permit, pursuant to a plea agreement with the State. In exchange for his guilty plea, the State agreed to recommend a thirty-year prison term with thirty years of parole ineligibility and the dismissal of all remaining counts on both indictments; however, defendant reserved the right to appeal the denial of the pretrial motions.

On January 18, 2018, defendant appeared for sentencing. Judge Ravin sentenced defendant in accordance with the plea agreement and imposed a thirty-year prison term with thirty years of parole ineligibility on the felony murder count, and a concurrent term of ten years with five years of parole ineligibility on the illegal possession of a weapon count. The judge dismissed the remaining charges against defendant.

On appeal, defendant raises the following arguments:

A-3816-17T3

POINT I

IT WAS ERROR FOR THE COURT TO DENY DEFENDANT'S REQUEST FOR A FRANKS[2] HEARING CONCERNING THE [CDWs] ISSUED FOR THE TELEPHONE NUMBERS.

POINT II

IT WAS AN ABUSE OF DISCRETION FOR THE TRIAL COURT TO DENY THE DEFENSE REQUEST FOR ORAL ARGUMENT ON THIS MOTION TO SUPPRESS EVIDENCE.

POINT III

BECAUSE THERE WAS AN INSUFFICIENT SHOWING OF PROBABLE CAUSE TO SUPPORT THE ISSUANCE OF THE SEARCH WARRANT, THE DEFENDANT'S MOTION TO SUPPRESS SHOULD HAVE BEEN GRANTED.

I

We discern the following facts from the record. In the late afternoon of December 15, 2013, Jaime and Dustin Friedland[3] drove their 2012 silver Range Rover to the The Mall at Short Hills (the mall) in Millburn and parked on the third-floor parking deck. Several hours later, Henry drove Roberts, Ford, and

---

[2] Franks v. Delaware, 438 U.S. 154 (1978).

[3] For clarity, and intending no disrespect, we refer to Jaime and Dustin Friedland by their first names.

 A-3816-17T3

defendant in a 1996 green and beige two-tone GMC Suburban to the same parking deck.

Shortly after 9:00 p.m., surveillance footage from the mall captured the couple returning to their Range Rover. Dustin opened the car door for Jamie and then walked around to the back of the car. At this point, Roberts and defendant approached Dustin; following a struggle, defendant shot Dustin in the head, inflicting a fatal wound. After pointing a gun at Jaime's head and ordering her to get out of the car, Roberts and defendant fled in the Range Rover, following Henry and Ford in the Suburban. Henry, Roberts, Ford, and defendant then returned to Newark.

Within an hour of the shooting, Lieutenant Luigi Corino of the Essex County Prosecutor's Office (ECPO) began reviewing mall surveillance footage, resulting in the issuance of a "be on the lookout" alert for both the Range Rover and the Suburban. Police recovered the Range Rover the following morning in Newark.

Investigators later learned that on December 12, 2013, Sergeant Jamal Poyner of the Millburn Police Department ran the license plate number of a GMC Suburban driving suspiciously up and down the aisles of the mall parking lot. Lieutenant Corino requested surveillance from that date, which revealed the Suburban following a 2013 white Range Rover out of the parking lot.

The police identified G.S.[4] as the owner of the white Range Rover. According to E-Zpass records from December 12, 2013, the Suburban passed through a New Jersey Turnpike toll booth immediately behind the Range Rover. Lieutenant Corino interviewed G.S.'s daughter, who confirmed she drove the Range Rover to the mall on December 12, 2013.

On December 17, 2013, the court granted the State's application to install and monitor a mobile tracking device on the 1996 GMC Suburban registered to a person believed to be Henry's mother.[5] In support of the application, the State provided an affidavit from Detective Miranda Mathis that stated, "During the course of the investigation, a review of the surveillance footage from the [mall] captured a 1996 GMC Suburban, New Jersey license plate [] leaving the mall parking deck at a high rate of speed followed by the carjacked Range Rover Wagon." She identified Henry's mother as the registered owner of the Suburban and stated the current location of the vehicle was at her address in South Orange.

---

[4] To protect their privacy, we use initials to refer to G.S. and her daughter.

[5] The record indicates it was later determined the actual owner of the vehicle was the "significant other" of Henry's mother, who resided at the same address as Henry and his mother.

A-3816-17T3

On December 19, 2013, Ford met with ECPO detectives; after waiving his Miranda[6] rights, he agreed to submit to an interview, which the detectives recorded. Ford provided a detailed account of the carjacking and admitted his involvement. He informed the detectives he was staying at his mother's house, and that the clothes he wore during the carjacking, including a burgundy vest, remained at that location.

In addition, Ford voluntarily turned over his cell phone to the detectives; a search of the phone revealed text messages from defendant's phone, telling Ford that he should not give anyone the phone number, and that he should "stop running" his "mouth." On December 20, 2013, police obtained arrest warrants for Henry, Ford, Roberts, and defendant.

On December 21, 2013, police executed a search warrant of the home of Henry's mother in South Orange. Later that day, police arrested Henry at a motel in Easton, Pennsylvania. After waiving his Miranda rights, Henry provided a statement, recounting the events leading up to the murder, the murder itself, and his efforts to evade detection.

During the statement, Henry confirmed that, several days prior to the murder, he and defendant drove to the mall in the GMC Suburban, looking for a Jeep Cherokee

---

[6] Miranda v. Arizona, 384 U.S. 436 (1966).

A-3816-17T3

to steal. He confirmed that he picked up Roberts, Ford, and defendant in the Suburban on the night of the murder and went to the mall to steal a Range Rover. Henry admitted he saw a gun in defendant's coat before the four men went to the mall.

In September 2015, defendants all filed or joined in motions to suppress evidence, including the cell phone records of all four defendants obtained with communication data warrants (CDWs). The cell phone records showed that all four defendants were together before the murder, that several of their phones pinged off of towers servicing the mall just before the murder, that their phones were not in use at the time of the murder, that the four men were in contact with one another shortly after the murder, and that all four defendants returned to the Newark area after the murder.

In an affidavit submitted by the State in opposition to the motion, Detective Mathis explained:

> I believed then, as I do now, that every factual assertion in that paragraph was and is accurate. . . . With regard to the language in question . . . "[t]he vehicle is currently located at [a specific address in] South Orange, New Jersey." While the language could lead [one] to conclude that the license plate was observed on the video, and it was not, the fact is our investigation led us to believe the car in the video had that plate number, that the plate number matched the car, that the last address for the car was [the

South Orange address], and most importantly that <u>the</u> car was <u>currently</u> at that address.

Without hearing oral argument on the motions, Judge Ravin issued a written opinion denying defendants' motions to suppress evidence, rejecting their arguments as lacking in merit. The judge also concluded that defendants were not entitled to a <u>Franks</u> hearing "because they failed to provide an offer of proof, such as witness affidavits, to support" their claims that "the affidavits were deliberately false or contained falsities made with reckless disregard for the truth."

Judge Ravin further explained:

> A literal reading of the statement . . . in support of the CDWs, that the Suburban captured on the surveillance had a license plate number . . . does not imply that the license plate number was visible in the surveillance video; rather, it is consistent with the implication that the license plate number could have been discovered from other sources, which is the State's claim, and that the license plate number was included in the affidavits for descriptive purposes.

Judge Ravin reasoned probable cause existed for the CDWs "because the totality of the circumstances described in the affidavit . . . supported the belief that tracking the [1996 two toned-green and beige GMC Suburban] would provide evidence" of the murder. The judge concluded the mistaken identification of Henry's mother as the owner of the vehicle, rather than defendant's mother's partner, "does not change the analysis."

A-3816-17T3

Additionally, Judge Ravin explained he denied oral argument on defendants' suppression motions because the issues were not complex, and he found the briefs submitted were succinct and precise. Thus, the judge reasoned that "judicial economy militate[d]" deciding the motions on the parties' briefs.

II

We affirm the denial of defendant's motion to suppress evidence and application for a <u>Franks</u> hearing, without oral argument, substantially for the reasons expressed by Judge Ravin in his cogent written opinion. We add the following comments.

We review the trial court's decision for abuse of discretion. <u>State v. Broom-Smith</u>, 406 N.J. Super. 228, 239 (App. Div. 2009). When reviewing a determination on a motion to suppress, this court "must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." <u>State v. Gamble</u>, 218 N.J. 412, 424 (2014). We will only reverse when the trial court's determination is "so clearly mistaken 'that interests of justice demand intervention and correction.'" <u>State v. Elders</u>, 192 N.J. 224, 244 (2007) (quoting <u>State v. Johnson</u>, 42 N.J. 146, 162 (1964)).

We first note there is "a presumption of validity with respect to the affidavit supporting the search warrant." <u>Broom-Smith</u>, 406 N.J. Super. at 240 (quoting <u>Franks</u>, 438 U.S. at 154). Where, as here, a defendant challenges the veracity of a

search warrant affidavit, a <u>Franks</u> hearing is required only "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause . . . ." <u>Franks</u>, 438 U.S. at 155-56. The defendant "must allege 'deliberate falsehood or reckless disregard for the truth,' pointing out with specificity the portions of the warrant that are claimed to be untrue." <u>State v. Howery</u>, 80 N.J. 563, 567 (1979) (quoting <u>Franks</u>, 438 U.S. at 171).

Furthermore, to obtain a <u>Franks</u> hearing, a defendant's allegations should be supported by affidavits or other reliable statements; "[a]llegations of negligence or innocent mistake are insufficient." <u>Broom-Smith</u>, 406 N.J. Super. at 241 (quoting <u>Franks</u>, 438 U.S. at 171). The allegations "must be proved by a preponderance of the evidence." <u>Howery</u>, 80 N.J. at 568. The defendant must also demonstrate that absent the alleged false statements, the search warrant lacks sufficient facts to establish probable cause. <u>Ibid.</u> If a search warrant affidavit contains sufficient facts establishing probable cause even when the alleged false statements are excised, a <u>Franks</u> hearing is not required. <u>Franks</u>, 438 U.S. at 171-72.

"The limitations imposed by <u>Franks</u> are not insignificant." <u>Howery</u>, 80 N.J. at 567. A defendant's burden is substantial because "a <u>Franks</u> hearing is not directed

at picking apart minor technical problems with a warrant application[,]" but rather, "it is aimed at warrants obtained through intentional wrongdoing by law enforcement agents[.]" Broom-Smith, 406 N.J. Super. at 240.

Defendant claims that Detective Mathis' affidavit contained a material misstatement by including the Suburban's license plate information, despite that information not being available on the surveillance footage. However, as Judge Ravin noted, defendant did not provide any additional evidence or submit an affidavit in order to make a substantial showing that Detective Mathis' affidavit contained deliberate falsehoods or statements made in reckless disregard for the truth.

Absent additional information, when reading the warrant application literally, the record is devoid of any evidence satisfying defendant's burden for a Franks hearing. See Broom-Smith, 406 N.J. Super. at 240-41. The record reveals there was sufficient corroborating evidence discovered at the beginning of the investigation which led to the inclusion of the Suburban's license plate information.

Moreover, Judge Ravin correctly concluded that even in the absence of the statement that defendant challenges, the affidavits for the CDWs established probable cause. Those affidavits included information provided by a confidential informant, whose tip corroborated the Suburban's identifying information, and the

various cell phone records obtained through an independent CDW. Since defendant failed to make any credible showing that the affidavit included false or perjured statements, the trial court did not err in denying the <u>Franks</u> hearing or his motion to suppress.

Defendant also failed to provide any convincing argument that Judge Ravin abused his discretion by denying his request for oral argument on his suppression motions. Defendant relies on <u>State v. Parker</u>, 459 N.J. Super. 26, 30-31 (App. Div. 2019), where we acknowledged "[o]ral advocacy is a fundamental aspect of our criminal justice system and should be encouraged, preserved and protected." However, only in civil and family part motions is oral argument granted on motions as of right. <u>R.</u> 1:6-2(d). Oral argument on a criminal motion is not mandated by the United States or New Jersey Constitutions or any applicable New Jersey Court Rule. Here, we find the judge did not abuse his discretion because he issued a written opinion and provided a reasonable explanation for denying oral argument, finding the issues were not complex and the briefs submitted were succinct and precise.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3816-17T3