**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3690-24

STATE OF NEW JERSEY,

     Plaintiff-Appellant,

v.

MITCHELL M. WATSON,

     Defendant-Respondent.

_____

> Submitted January 28, 2026 – Decided February 12, 2026
>
> Before Judges Gummer, Paganelli, and Jacobs.
>
> On appeal from the Superior Court of New Jersey, Law Division, Salem County, Indictment No. 23-01-0021.
>
> Kristin J. Telsey, Salem County Prosecutor, attorney for appellant (Marianne Victoria Rogers Morroni, Assistant Prosecutor, of counsel and on the briefs).
>
> Jennifer N. Sellitti, Public Defender, attorney for respondent (Margaret R. McLane, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

     The State appeals the trial court's May 2, 2025 order granting defendant

Mitchell M. Watson's motion to suppress physical evidence and June 9, 2025 order dismissing the indictment against him without prejudice.[1]  We affirm.

I.

On the afternoon of August 11, 2022, detectives from the New Jersey State Police Crime Suppression South Unit (CSSU), the New York/New Jersey Regional Fugitive Task Force of the United States Marshals Service, and detectives from the Salem County Prosecutor's Office coordinated with Salem City police officers to execute an arrest warrant against defendant.

Officers knocked and entered defendant's home without incident.  On entry, they encountered defendant sitting on a couch in the living room, dressed in only a towel.  Because he required a wheelchair for mobility, defendant directed officers to his bedroom to obtain his clothing.  While in defendant's bedroom, CSSU Detective Sergeant Michael Legatie noticed an open dresser drawer.  In it, he observed rubber bands, plastic bags, and United States

---

[1]  The Notice of Appeal lists a June 4, 2025 order in addition to orders dated May 2, 2025 and June 9, 2025.  Reference to a June 4 order may be a typographical error, as the State does not address any argument regarding a purported June 4, 2025 order.  Regardless, "[a]n issue not briefed is deemed waived on appeal."  Morris v. T.D. Bank, 454 N.J. Super. 203, 206 n.2 (App. Div. 2018) (citing N.J. Dep't of Env'l Prot. v. Alloway Twp., 438 N.J. Super. 501, 505-06 n.2 (App. Div. 2015)).

A-3690-24

currency. Based on training and experience, he surmised the items to be "narcotic paraphernalia."

After providing defendant with clothing and removing him from the residence, Legatie conferred with CSSU Detective Christopher Piligno in preparation of an affidavit for a search warrant. The affidavit described Legatie as having seen "multiple small clear zip lock baggies which are commonly used for packaging controlled dangerous substances [(CDS)] along with[] small black rubber bands and a roll of United States [c]urrency[,] all indicative of CDS distribution." Under oath, Piligno attested he had probable cause to believe defendant's residence contained evidence of CDS. He sought a knock-and-announce warrant to search the premises and its occupants and to seize CDS, weapons, and electronic communications devices.

A Superior Court judge approved the application and issued a search warrant. In searching defendant's home, officers recovered a safe from his bedroom containing: two semi-automatic handguns, one holding a large-capacity magazine; a box of .45-caliber bullets; a box of .38 caliber bullets; a digital scale; clear plastic bags; approximately sixty grams of cocaine, and 110 wax folds containing fentanyl and xylazine.

On January 11, 2023, a Salem County grand jury returned an indictment

A-3690-24

against defendant, charging him with: two counts of second-degree possession of a handgun while committing CDS offenses, N.J.S.A. 2C:39-4.1(a), 2C:35-5; two counts of third-degree possession of a CDS (fentanyl and cocaine), N.J.S.A. 2C:35-10(a)(1); and two counts of third-degree possession of CDS with intent to distribute, N.J.S.A. 2C:35-5(b)(5).

Defendant moved to suppress the physical evidence obtained from the search. On April 12 and September 20, 2024, Judge Russell A. DePersia heard testimony on the motion.

Salem County Probation Officer Brian Skoblar, Piligno, and Legatie testified on behalf of the State. The above facts are drawn from their testimony. Defense counsel cross-examined the State's witnesses, calling no witnesses on defendant's behalf.

On May 2, 2025, Judge DePersia heard argument from the parties and issued an oral ruling. The judge agreed with the State that execution of the arrest warrant in defendant's home was not unreasonable.

However, the judge agreed with defendant the drawer in plain view did not contain evidence of "narcotic paraphernalia" or distribution:

> What the officer describes in the search warrant, as well as his testimony, was "[m]ultiple small clear Ziplock baggies commonly used for packaging [CDS], along with small black rubber bands, and a roll of

United States currency, all indicative of CDS distribution."

That's not what's in this drawer. So that was a reckless description of what was in this drawer. And the [c]ourt has a big issue with that.

And I agree with the defense in the brief. The defense in [its] brief shows there's a lot of items in this drawer, and that's not described. There's a black sweatshirt. There is . . . I'm looking at socks. I'm looking at a bag that's not little baggies that is utilized in [CDS] cases. This is a large bag that covers half a distance of the drawer. And . . . there doesn't appear to be anything in the bag.

And there's all little rubber bands, which look like hair ties. And there's diapers. And there's socks. And there's a pencil. And -- this is a junk drawer.

So I don't understand how getting this defendant's pants and looking anywhere near this drawer would trigger to the officer that this is a[ny] – indication[] of drug distribution. I do not see it. I do not see it at all.

. . . .

I do not see that the officer had probable cause to find, based on the plain[-]view doctrine, that this was indicia or had any reason to believe that this was . . . anything other than a junk drawer and should have just given this defendant his pants and his shirt, and got him on his way and arrested him under the warrant.

So I do find that . . . the plain[-]view exception is not met here based on there's no probable cause to find that the items in here are any indication of drug paraphernalia or distribution.

A-3690-24

And . . . I'm reading from the defendant's brief that . . . when he attaches the exhibits of the same picture, in his brief, Exhibit B shows a black sweatshirt, a pink iPhone case, three or four [twenty-]dollar bills. And he describes it as a roll of bills. These are loose twenties inside the drawer. They weren't rolled. They were loose twenties.

And a piece of plastic sticking out from . . . under the sweatshirt. I don't see where, again, there's any indication that this is drug paraphernalia or indications of distribution.

Exhibit C shows a sweatshirt. On the defense's brief, again, it's the same exhibit, of a sweatshirt out of the drawer. A giant sized Ziplock bag. A bunch of hair ties, diapers, socks, underwear, bandage, pencils, and various UNO cards. I forgot about the UNO cards. And there's UNO cards in here, too.

Because the judge found the plain-view doctrine inapplicable, he determined the evidence seized from the drawer should be suppressed. He issued an order granting defendant's suppression motion that same day.

On June 9, 2025, the judge suppressed as fruit of the poisonous tree evidence obtained from execution of the search warrant because police had obtained the warrant based on the now-suppressed items found in the drawer. Finding the State had no evidence on which to proceed, the judge dismissed the entire indictment without prejudice for thirty days, as memorialized in an order dated that day.

6

The State appealed, raising the following argument:

THE TRIAL COURT'S ORDERS SUPPRESSING PHYSICAL EVIDENCE AND DISMISSING THE ENTIRETY OF THE CRIMINAL INDICTMENT SHOULD BE REVERSED.

II.

"Generally, on appellate review, a trial court's factual findings in support of granting or denying a motion to suppress must be upheld when 'those findings are supported by sufficient credible evidence in the record.'" State v. S.S., 229 N.J. 360, 374 (2017) (quoting State v. Gamble, 218 N.J. 412, 424 (2014)). This is because the trial court has the "opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Elders, 192 N.J. 224, 244 (2007) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). "Thus, appellate courts should reverse only when the trial court's determination is 'so clearly mistaken that the interests of justice demand intervention and correction.'" Gamble, 218 N.J. at 425 (internal quotation marks omitted) (quoting Elders, 192 N.J. at 244).

"A trial court's interpretation of the law, however, and the consequences that flow from established facts are not entitled to any special deference." Ibid. (citing State v. Gandhi, 201 N.J. 161, 176 (2010); Manalapan Realty v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). "Therefore, a trial court's

A-3690-24

legal conclusions are reviewed de novo." Ibid. (citing Gandhi, 201 N.J. at 176).

Dismissal of an indictment is generally reviewed for an abuse of discretion. State v. Thompson, 250 N.J. 556, 572 (2022) (citing State v. Twiggs, 233 N.J. 513, 532 (2018)). However, when the dismissal is predicated upon a "purely legal question," that determination is reviewed de novo. Twiggs, 233 N.J. at 532. Such questions include Fourth Amendment issues. See State v. Handy, 206 N.J. 39, 45 (2011) (holding issue of suppressing evidence is a "purely legal question"); State v. Missak, 476 N.J. Super. 302, 314 (App. Div. 2023) (holding issue of search warrant's validity is "purely legal, and thus appropriate for judicial resolution without developing additional facts") (internal quotation marks omitted) (quoting Comm. to Recall Robert Menendez From the Off. of U.S. Senator v. Wells, 204 N.J. 79, 99 (2010)).

An "indictment should be disturbed only on the 'clearest and plainest ground[s],' and 'only when the indictment is manifestly deficient or palpably defective.'" State v. Shaw, 241 N.J. 223, 239 (2020) (alteration in original) (citations omitted) (first quoting State v. Perry, 124 N.J. 128, 168 (1991); and then quoting State v. Hogan, 144 N.J. 216, 229 (1996)). "A trial court . . . should not disturb an indictment if there is some evidence establishing each element of the crime to make out a prima facie case." State v. Morrison, 188 N.J. 2, 12

(2006).

Pursuant to the Fourth Amendment to the United States Constitution and Article I, Paragraph 7 of our State Constitution, "[c]onstitutional protections prohibiting unreasonable searches and seizures 'impose a standard of reasonableness on the exercise of discretion by government officials to protect persons against arbitrary invasions.'" Gamble, 218 N.J. at 425 (quoting State v. Maristany, 133 N.J. 299, 304 (1993)). "Reasonableness is the 'touchstone' of the Fourth Amendment." Ibid. (quoting State v. Crumb, 307 N.J. Super. 204, 245 (App. Div. 1997)).

"A warrantless search is presumed invalid unless it falls within one of the recognized exceptions to the warrant requirement." Ibid. (quoting State v. Cooke, 163 N.J. 657, 664 (2000)). "The State bears the burden of demonstrating that a warrantless search is justified by 'one of the "few specifically established and well-delineated exceptions" to the warrant requirement.'" State v. Bogan, 200 N.J. 61, 73 (2009) (quoting State v. Frankel, 179 N.J. 586, 598 (2004) (quoting Mincey v. Arizona, 437 U.S. 385, 390 (1978))).

One such exception is the plain-view doctrine. See State v. Johnson, 476 N.J. Super. 1, 20 (App. Div. 2023). To justify a warrantless search under this doctrine, "the State must prove: (1) 'the officer [was] lawfully . . . in the area

9

where he observed and seized the incriminating item or contraband'; and (2) 'it must be immediately apparent that the seized item is evidence of a crime.'" Id. at 20-21 (alteration in original) (quoting State v. Gonzales, 227 N.J. 77, 101 (2016)).

"However, the plain[-]view exception does not authorize police to cross the threshold of a constitutionally protected place." Id. at 21. "Rather, the plain[-]view exception presupposes the officer is already lawfully present within the premises . . . at the moment the observation is made." Ibid. (citing State v. Wright, 221 N.J. 456, 478 (2015)). See also Gonzales, 227 N.J. at 101 ("Under the plain-view doctrine, the constitutional limiting principle is that the officer must lawfully be in the area where he observed and seized the incriminating item or contraband, and it must be immediately apparent that the seized item is evidence of a crime.").

Applying this well-established law, we conclude the trial judge did not err in granting defendant's suppression motion. His finding that the drawer was primarily a "junk drawer" was supported by "sufficient credible evidence in the record." S.S., 229 N.J. at 374 (quoting Gamble, 218 N.J. at 424). The evidence presented at the hearing included photographs of the drawer and its contents. The judge had the "opportunity to hear and see the witnesses and to have the

'feel' of the case." Elders, 192 N.J. at 244 (quoting Johnson, 42 N.J. at 161). He reasonably discerned Legatie's testimony "was a reckless description of what was in th[e] drawer." The judge's factual findings and credibility determinations were not "clearly mistaken" so as to warrant reversal, and we are thus bound by them. Gamble, 218 N.J. at 425 (internal quotation marks omitted) (quoting Elders, 192 N.J. at 244).

Based on those findings, the judge correctly applied the plain-view doctrine. Although the officers were lawfully present within defendant's residence, it was not "immediately apparent" the evidence seized and used as the basis for the search warrant was indicative of a crime. Johnson, 476 N.J. Super. at 21 (quoting Gonzales, 227 N.J. at 101). Rather, the drawer contained a collection of seemingly random items insufficient to constitute probable cause for a search warrant, as the judge reasonably determined. See also State v. Perkins, 358 N.J. Super. 151, 162 (App. Div. 2003) (holding the plain-view doctrine did not justify seizure of illegal weapons because its criminal nature was not "immediately apparent" to officers at time of seizure).

Because the facts do not support a finding the plain-view doctrine is applicable, the subsequent search was presumptively invalid and the evidence was properly suppressed. Gamble, 218 N.J. at 425 (quoting Cooke, 163 N.J. at

11

664).  See also State v. Carter, 235 N.J. Super. 232, 242 (App. Div. 1989) (holding under the exclusionary rule "evidence which undeniably establishes guilt . . . shall be suppressed" as fruit of the poisonous tree).

Moreover, because all the evidence supporting the charges was suppressed, there remains no "evidence establishing each element of the crime" sufficient "to make out a prima facie case."  Morrison, 188 N.J. at 12.  Thus, the indictment was "manifestly deficient" from an evidentiary standpoint and properly dismissed.  Shaw, 241 N.J. at 239 (quoting Hogan, 144 N.J. at 229).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

12