**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1219-14T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

NATHAN CRAFT,

    Defendant-Appellant.

_____

Submitted October 26, 2016 — Decided  May 10, 2017

Before Judges Alvarez and Accurso.

On appeal from Superior Court of New Jersey,
Law Division, Monmouth County, Indictment
No. 12-03-0551.

Joseph E. Krakora, Public Defender, attorney
for appellant (Elizabeth C. Jarit, Assistant
Deputy Public Defender, of counsel and on
the brief).

Christopher J. Gramiccioni, Monmouth County
Prosecutor, attorney for respondent (Mary R.
Juliano, Assistant Prosecutor, of counsel
and on the brief; Kristen M. Pridgen, Legal
Assistant, on the brief).

PER CURIAM

    Following the denial of his motion to suppress evidence

seized in a warrantless search, defendant Nathan Craft pled

guilty to second-degree possession with intent to distribute cocaine, N.J.S.A. 2C:35-5b(2), and was sentenced in accordance with an agreement negotiated pursuant to the Brimage Guidelines. As authorized by Rule 3:5-7(d), defendant appeals from the denial of his motion to suppress the drugs found in his car, raising only one issue:

> BECAUSE THE STATE FAILED TO ESTABLISH THAT CRAFT'S CONSENT TO SEARCH WAS KNOWING AND VOLUNTARY, THE COURT ERRED IN DENYING HIS MOTION TO SUPPRESS.

Finding no basis to disturb Judge Oxley's factual findings or legal conclusions, we affirm.

Defendant did not testify or present any witnesses at the suppression hearing. The arresting officer testified he was driving south on Hope Road in Tinton Falls when he noticed a tan Buick with tinted windows traveling in the same direction. The officer checked the Buick's license plate and learned the registered owner had a suspended license. The officer pulled the car over and approached the driver, later identified as defendant Nathan Craft.

In the course of speaking to the driver, the officer noticed the smell of marijuana, and asked defendant whether he had been smoking the drug. Defendant admitted he had smoked marijuana an hour or two earlier. The officer asked defendant

to step out of the car and radioed his sergeant. The officer asked defendant whether he was armed, and if the officer could pat him down. Defendant said he was not armed and consented to a pat down. Noticing a bulge in one of defendant's pockets, the officer discovered a large wad of cash but no weapon. In response to the officer's question as to why he was carrying so much cash, defendant told the officer it was about $8000, which he had to pay bills. The officer returned the cash to defendant, and spoke to the sergeant who had arrived on the scene.

The officer approached defendant with a consent to search form, reviewed it with him and requested defendant's consent to search the car. The officer testified defendant refused to sign the form but told him he could search the car. The officer testified he spoke to defendant for about three to five minutes, making sure he had defendant's consent to search the car and trying to understand why, if defendant was consenting to the search, he was unwilling to sign the form.

The officer testified defendant took issue with the language of the form authorizing the police "to remove and retain any items of evidential value which they consider pertinent to their investigation." Specifically, defendant told

the officer he had no objection to the officer searching his car, he just did not want the police to take his money.

After confirming with defendant that he understood he had the right to refuse the search, and that he was consenting to the search but would not sign the form, the officer signed and dated the form, noting that defendant "[r]efused to sign 11-1-11 5:54pm." Underneath the space provided for defendant's signature, the officer wrote, "gave permission[;] verbal consent[;] didn't want us to take money." The sergeant also signed and dated the form. On cross-examination, the officer conceded that although he was without basis to seize the cash when he handed it back to defendant after the pat-down, he knew if drugs were discovered in the car, he would seize the cash for forfeiture.

Following completion of the form, the officer searched the car and found part of a plastic bag sticking up between the cushions of the backseat. Inside was eighty-five grams of cocaine packaged in smaller bags. Defendant was arrested, his cash was seized, and he was transported to the police station where he was processed and released on his own recognizance after giving a statement.

The detective who took defendant's videotaped statement also testified at the suppression hearing. He explained he was

directed to conduct the interview, "because it's not every day that you . . . have somebody say hey, search my car but I'm not going to sign the consent."[1] After defendant executed the Miranda[2] form, the detective asked him what had occurred during the course of the stop, whether he had consented to have his car searched, and why he refused to sign the form.

On the videotape, which was played in court and authenticated by the detective, defendant described the stop very similarly to the way the officer had described it in his testimony. Defendant several times conceded he gave the officer permission to search his car. He explained he refused to sign the form, which he reviewed with the detective, because he "[did not] know the law," and the language of the form "was subject to interpretation." Defendant told the detective he did not understand the full ramifications of the clause that allowed the police to seize evidence, and he did not want the officer to take his $8000.

---

[1] Although the detective testified he was not aware the stop had not been recorded at the time he was directed to take defendant's statement, the arresting officer testified he was driving a canine unit, which was not equipped with video or audio equipment in 2011 when the stop occurred.

[2] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

When the detective pressed defendant as to why then had he consented to the search, knowing he had a right to refuse, defendant expressed the view that the officer was going to search no matter what defendant said.[3] When the detective asked whether the Tinton Falls officer had said or done anything during the stop to indicate he was going to search defendant's car regardless of whether he got consent, defendant explained he based his belief on his and others' prior experiences. That comment led to an exchange in which the detective stressed that officers have to stop a voluntary search upon request and defendant expressing skepticism that any officer would ever do so. Defendant, who is black, told the detective, who is white, that their views on whether the police respected the rights of people pulled over in traffic stops likely differed because "we walk two different lives."

After listening to the officer's testimony, viewing the video and the consent forms in evidence, and hearing the argument of counsel, Judge Oxley denied defendant's motion to suppress the drugs found in the car. The judge found the officer had reasonable suspicion to stop defendant's car after the license plate look-up revealed the owner's license was

---

[3] Defendant also told the detective he "didn't know what was in the car."

suspended. See State v. Donis, 157 N.J. 44, 58 (1998). He further found the odor of marijuana emanating from defendant's car provided the officer with reasonable and articulable suspicion of criminal activity, thereby justifying the officer's request to search defendant's car. See State v. Carty, 170 N.J. 632, 647 (2002).

Based on the officer's "uncontradicted" and credible testimony that he advised defendant of his right to refuse consent, and that defendant thereafter consented to the search of his car, as defendant later confirmed to the detective, the judge found defendant's consent knowing and voluntary. See State v. Domicz, 188 N.J. 285, 308-09 (2006). Despite acknowledging defendant's statement to the detective that defendant believed the officer would have searched the car regardless of whether defendant consented, the judge noted there was nothing in the record to suggest defendant had been pressured or coerced. See State v. King, 44 N.J. 346, 352-53 (1965) (listing factors to consider in determining whether consent to search was coerced). Finally, the judge rejected defendant's argument that he had conditioned his consent on the officer "not taking his money." Besides noting the officer had returned defendant's money to him after the pat down, the judge found the cash was not seized pursuant to defendant's consent to

7

search his car but was instead seized in a search incident to his lawful arrest.

Our standard of review on a motion to suppress is limited. See State v. Gamble, 218 N.J. 412, 424 (2014). We defer to the trial court's factual findings on the motion, unless they were "clearly mistaken" or "so wide of the mark" that the interests of justice require appellate intervention. State v. Elders, 192 N.J. 224, 245 (2007). "Deference to these factual findings is required because those findings 'are substantially influenced by [an] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" Gamble, supra, 218 N.J. at 424-25 (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). Our review of the trial court's application of the law to the facts, of course, is plenary. State v. Hubbard, 222 N.J. 249, 263 (2015).

Defendant argues because he "refused to sign the consent to search form, told the officer that he did not understand a portion of the form, placed a limitation on the search that would have negated any consent, and believed that the officer would have searched his car regardless of whether consent was obtained," the State failed to meet its burden and the court erred in denying his motion to suppress. We do not agree.

A-1219-14T2

"Consent is . . . a factual question to be determined from the relevant circumstances." State v. Koedatich, 112 N.J. 225, 264 (1988), cert. denied, 488 U.S. 1017, 109 S. Ct. 813, 102 L. Ed. 2d 803 (1989). Although the car stop was not recorded, the trial court had the benefit of the officer's testimony and both it and we have the benefit of defendant's videotaped interview, in which he candidly and calmly discussed what happened on the road and his rationale for giving consent but refusing to sign the form. Although first-hand accounts in these situations are often wildly divergent, here they were remarkably similar.

Counsel's argument that defendant did not understand his right to refuse consent is completely belied by a view of the videotape. Although defendant did not finish high school, instead obtaining a G.E.D., he presents as an intelligent and thoughtful individual, self-respecting and forthright in the midst of what the detective described as "not a good time for [him]." Indeed, the judge surmised that defendant's demeanor was one of the chief reasons he was released on a summons. In the interview, defendant makes clear that what he did not understand was whether, by virtue of the language allowing the police "to remove and retain any items of evidential value which they consider pertinent to their investigation," he would be

giving consent to the officers to seize the cash in his pocket, which he did not wish to do.

Although there is no question but that "the scope of a consent search is limited by the terms of its authorization," State v. Santana, 215 N.J. Super. 63, 72 (App. Div. 1987), we cannot find that defendant somehow limited his unequivocal consent to search his car by his unwillingness to surrender the cash the detectives had already found in his pocket and returned to him.  Neither are we aware of any requirement that would have the officer explain that if they found drugs in the car, they could lawfully seize the cash in his pocket, as well as his car, on the theory it was integral to or utilized in furtherance of illegal drug distribution, see N.J.S.A. 2C:64-1a(2)-(3), even though aware he did not want police to take his money.  Although defendant's consent ultimately led to the seizure of the cash, the cash was not seized pursuant to defendant's unequivocal consent to search his car.

As for defendant's statement to the detective that he only consented because of his belief that the police would have searched anyway, we do not find it undermined defendant's objective acknowledgement "that he had a choice in the matter." State v. Johnson, 68 N.J. 349, 354 (1975).  We are mindful of his concession to the detective that the Tinton Falls officers

treated him with respect and made no attempt to coerce his compliance.  A defendant's subjective perception that his consent was coerced will not vitiate an otherwise valid given consent to search.  State v. Binns, 222 N.J. Super. 583, 589 (App. Div.), certif. denied, 111 N.J. 624 (1988).

Because we concur with Judge Oxley's view of the law, and find no basis to second-guess his findings of fact, we affirm the denial of defendant's motion to suppress evidence of the drugs seized from his car pursuant to a valid consent search.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1219-14T2