**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3785-17T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

TIMOTHY M. CHAMBERS,

     Defendant-Appellant.

_____

Submitted March 31, 2020 – Decided July 14, 2020

Before Judges Accurso and Gilson.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 15-09-0630.

Joseph E. Krakora, Public Defender, attorney for appellant (Stefan Van Juran, Assistant Deputy Public Defender, of counsel and on the brief).

Lyndsay V. Ruotolo, Acting Union County Prosecutor, attorney for respondent (Michele C. Buckley, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

Following the denial of his motion to suppress evidence seized in a warrantless search, defendant Timothy M. Chambers was convicted by a jury of first-degree robbery, N.J.S.A. 2C:15-1, and sentenced to life in prison on the State's motion for a mandatory life term in accordance with N.J.S.A. 2C:43-7.1(a). Defendant appeals from the denial of his motion to suppress drug paraphernalia leading to his arrest, which ultimately resulted in the recovery of a jacket and boots linking him to the robbery. Finding no error in the court's application of the law to the facts it found on the motion, we affirm.

The only witness to appear at the suppression hearing was the arresting officer, a patrol sergeant with twenty years on the force, fourteen of which were spent in the detective bureau. He testified he was on patrol in Hillside when he recognized a car described in a recent BOLO [be on the lookout] alert in connection with a string of armed robberies, including one of a carwash the month before. The carwash robbery was captured on video surveillance. The video showed both robbers, one a tall, heavy-set black male. The car used in the commission of the robberies was described in the BOLO as an older model, dark-colored SUV with a broken driver's side headlight, an inoperable passenger side taillight, and a mis-matched wheel on the driver's side.

When the officer, who was riding alone, saw a car matching that description, he followed it for a few blocks until it pulled over in front of a house on Wainwright Street in Newark. Believing the car was the one used in the robberies, the officer pulled in behind it and called for backup before walking over to the driver's door. The driver, a woman, provided the officer with registration and insurance cards but could not produce a license. The officer thought the front seat passenger, a large, heavy-set black man later identified as defendant, generally matched the description of one of the two suspects in the robberies.

As the officer spoke to the driver, defendant leaned over and asked the driver something about why they were stopped. As defendant leaned forward, the officer noticed he reached toward his feet and appeared to conceal something on the floor. Believing that defendant was one of the suspects in the carwash robbery, and knowing police had not recovered the gun used in that robbery, the officer asked defendant to get out of the car immediately after backup arrived. As other officers walked defendant to the rear of the car, the arresting officer inspected the floor in front of defendant's seat. In addition to the driver, another passenger remained in the back seat while the officer conducted that sweep.

3

The officer said he saw some garbage on the floor, and just in front of the seat, a dirty washcloth. Testifying on direct examination, the officer stated he lifted the washcloth to see if defendant had hidden a weapon under it. Instead of a weapon, the officer found drug paraphernalia, specifically two glass tubes with burnt tips; crack pipes. Defendant was arrested and, according to the officer, subsequently consented to the search of the trunk, where officers found the jacket and boots linking him to the carwash robbery.

On cross-examination, defense counsel probed the officer's professed concern for officer safety in searching the floor of the front seat while two other people remained in the car. Counsel also got the officer to concede he never mentioned the washcloth in his report, or that he had lifted it to search for weapons. Finally, defense counsel got the officer to admit his search was not limited to weapons, but that he was instead "looking for anything that could have been concealed at that point." On re-direct, the officer clarified that he was looking for "[a]nything of possible evidentiary value," such as "paraphernalia, narcotics, a weapon, anything to that effect."

The State argued the search was justified under the law permitting protective sweeps for officer safety. The State contended the officer having recognized both the car and defendant from the descriptions in the BOLOs and

4

knowing the gun used in those robberies had not been recovered, provided him objective, reasonable, and particularized suspicion that defendant either had engaged or was about to engage in criminal activity and a reasonable belief that he was dangerous and could gain control of a weapon.

The defense countered that the robberies prompting the BOLOs had occurred almost a month before this stop, and the arresting officer's report did not mention anything about him having recognized the car or defendant as having matched the descriptions in those alerts. Defense counsel claimed those facts undercut any heightened suspicion that the gun used in those robberies could be in the car.

Defense counsel also argued the officer's testimony of concern for officer safety was belied both by his description of what he was looking for and his having left the driver and another passenger in the car while he searched the floor of the front seat. Defense counsel asserted the officer "candidly testified" that he was not engaged in a protective sweep when he searched the front passenger area of the car, but instead picked up the washcloth to see whether it hid contraband of any sort, be it drug paraphernalia or a weapon or anything else. Noting "[a] protective sweep is not about locating items of evidence and it's not about locating drugs," counsel argued

5

"if this is a search for drugs and/or something else, that can't be justified by protective sweep case law."

The judge began his ruling by making clear that defendant's argument was that the jacket and boots seized in a consent search of his trunk following his arrest could only be sustained if that arrest, and the search that prompted it, were done legally. In determining that the search was done legally, the judge credited the testimony of the officer that he recognized both the car and then defendant as matching the descriptions contained in the BOLOs. The judge also credited the officer's testimony that he was aware the gun used in the string of robberies had not been recovered, and "he was concerned that the front passenger was trying to conceal a weapon."

The judge concluded

> based on [the officer's] testimony which I found credible on these points, that he did a protective search of the area where the passenger was sitting, because he was concerned that he was trying to conceal a weapon, that he believed that that passenger and the vehicle were involved in an armed robbery, a number of armed robberies, where a weapon was clearly used from the BOLO's and the pictures in the BOLO's, and there was a legitimate basis for a protective sweep.

6

Acknowledging that the protective sweep the officer performed may not have been "done in the smartest way or the most thorough way," the judge nevertheless found it was accomplished in a legal way because the area searched was "not secure" but "in reach of other passengers in the car."

Defendant appeals raising one issue for our consideration:

> POINT I
>
> THE CONVICTIONS SHOULD BE REVERSED BECAUSE THE BOOTS AND JACKET – WHICH WERE A SIGNIFICANT PART OF THE IDENTIFICATION EVIDENCE – SHOULD HAVE BEEN SUPPRESSED AS THEY WERE OBTAINED THROUGH CONSENT TAINTED BY AN ARREST BASED ON AN UNLAWFUL SEARCH.

Defendant echoes that point in his supplemental brief and adds:

> DEFENDANT-APPELLANT TIMOTHY M. CHAMBERS' CONSENT TO SEARCH HIS VEHICLE SHOULD BE SUPPRESSED FOR THAT DEFENDANT WAS NOT OF SOUND AND/OR COMPETENT MIND TO BE ABLE TO AGREE TO SUCH A CONSENT.

We reject both arguments.

Our standard of review on a motion to suppress is well established. State v. Gamble, 218 N.J. 412, 424-25 (2014). We defer to the trial court's factual findings on the motion, unless they were "clearly mistaken" or "so wide of the mark" that the interests of justice require appellate intervention. State v.

Elders, 192 N.J. 224, 245 (2007) (internal quotations omitted). That deference is required because it is the trial court that watched the witnesses testify and thus, had "the 'feel' of the case, which a reviewing court cannot enjoy." Gamble, 218 N.J. at 425 (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). Our review of the trial court's application of the law to the facts, where the trial court enjoys no special advantage, is plenary. State v. Hubbard, 222 N.J. 249, 263 (2015).

A protective sweep is a well-recognized exception to the warrant requirement. Gamble, 218 N.J. at 426. "An officer lawfully stopping a vehicle may conduct a protective frisk of the passenger compartment if he has a reasonable suspicion that the individual is dangerous and may gain immediate access to weapons." Id. at 431-32. "A protective sweep, permitted in order to ferret out weapons that might be used against police officers, must be cursory and limited in scope to the location where the danger may be concealed." State v. Robinson, 228 N.J. 529, 534 (2017) (quoting Gamble, 218 N.J. at 433).

The trial court applied that law in finding the officer's limited search of the floor where defendant had been resting his feet qualified as a permitted protective sweep based on the officer's credible testimony that he believed

defendant had committed several recent armed robberies and may have been trying to conceal the gun used in those robberies on the floor in front of him. Defendant argues that while it might appear "[a]t first blush," that the officer conducted a valid protective sweep under settled principles, the officer's candid admission that he lifted the wash cloth to see whether it concealed any items of contraband, not just a weapon, proved he "conducted the very generalized search that the protective sweep doctrine expressly forbids."

We cannot agree that the officer's statement transformed this limited protective sweep into a generalized search prohibited by the Fourth Amendment. Central to our conclusion is the trial court's acceptance of the officer's very specific testimony that he believed defendant was the man police were searching for in connection with the recent armed robberies, and that defendant may have been trying to conceal a weapon at his feet while the officer was talking to the driver. Underscoring the officer's concern for his own safety, he waited for backup before asking defendant to step out of the car in order to conduct a quick, cursory search limited to that area.

We are convinced, as was the trial judge, that the officer's quick, cursory search of the floor at defendant's feet in response to seeing him appear to conceal what the officer reasonably suspected could have been a gun, made

this an objectively reasonable protective sweep. See Gamble, 218 N.J. at 426. The officer's putative intention to look beneath the washcloth for anything having "possible evidentiary value," including a weapon, does not change the objective reasonableness of lifting it in order to see whether it concealed a gun. See State v. Bacome, 228 N.J. 94, 103 (2017) (noting "[t]he objective reasonableness of police officers' actions—not their subjective intentions—is the central focus of federal and New Jersey search-and-seizure jurisprudence").

As for defendant's argument that his consent to search the trunk was not voluntary, there is nothing in the record on appeal to support his argument.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3785-17T2