**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2240-21

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

KWABENA OHENE-BONSU,

     Defendant-Appellant.

_____

> Submitted January 18, 2024 – Decided February 13, 2024
>
> Before Judges Currier and Vanek.
>
> On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 20-01-0140.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Rochelle Mareka Amelia Watson, First Assistant Deputy Public Defender, of counsel and on the brief).
>
> Mark Musella, Bergen County Prosecutor, attorney for respondent (William P. Miller, Assistant Prosecutor, of counsel and on the brief; Catherine A. Foddai, Legal Assistant, on the brief).

PER CURIAM

Defendant Kwabena Ohene-Bonsu appeals from a November 5, 2021 conviction for fourth-degree operating a motor vehicle during a period of license suspension in violation of N.J.S.A 2C:40-26(b). We reject defendant's assertions that his conviction should be vacated because it was predicated on an unconstitutional motor vehicle stop and affirm the trial court's December 10, 2020 denial of defendant's motion to suppress evidence.

We derive the material facts from the December 10, 2020 evidentiary hearing at which Fort Lee Police Officer Nicole Busanic and Palisades Interstate Parkway (PIP) Sergeant Gregory Kimbro testified.

On October 15, 2019,[1] around 7:58 a.m., Busanic was monitoring traffic conditions near the George Washington Bridge and observed defendant's vehicle "riding the shoulder" in what she believed was an attempt to avoid traffic. Busanic activated the patrol car's lights and initiated a motor vehicle stop. Upon approaching the vehicle, Busanic requested defendant's driver's license, registration, and insurance card. Defendant produced a New Jersey driver's license bearing the name Kwabena Osei-Bonsu. Busanic issued a summons to

---

[1] We note that defendant's brief indicates the events in question took place on October 19, 2019. We use the date set forth in the judgment of conviction.

Kwabena Osei-Bonsu for improper passing and advised defendant he was free to leave.

Approximately thirty minutes later, Kimbro was driving a marked police vehicle and observed defendant's car "drive over the solid line on the right shoulder and then continue to drive on the solid – over the solid line on the shoulder." He also saw that the license plate frame on the vehicle obstructed the writing on the plate. Kimbro slowed down to allow defendant's car to pass him in order to determine how many passengers were in his vehicle, activated his overhead lights to alert defendant to pull over, positioned his vehicle behind defendant's and then stopped. Although Kimbro's patrol vehicle was equipped with a dashboard camera, the system did not begin recording until Kimbro turned on the vehicle's patrol lights and ordered defendant to pull his car over to the side of the roadway.

When both vehicles were stopped, Kimbro approached and asked defendant for his license, registration, and insurance card. While waiting for the documents, Kimbro detected an odor of suspected burnt marijuana emanating from inside the vehicle. Defendant handed Kimbro a driver's license bearing the name Kwabena Osei-Bonsu with a birthdate of March 7, 1989. According to Kimbro, when he asked defendant to step out of the vehicle, he "reeked of weed"

3 <span>A-2240-21</span>

and had a work identification and two summonses from Fort Lee in his hand that he tried to give Kimbro.

Based upon the smell of suspected marijuana, Kimbro searched the vehicle and found what he believed to be a mostly burnt, hand-rolled marijuana cigar as well as loose marijuana. The second PIP officer who arrived at the scene to provide back-up support observed a wallet in plain view on the front passenger-side seat which, upon examination, contained a second New Jersey driver's license, credit cards, a college identification, a blood center card, and a benefits card all bearing the name Kwabena Ohene-Bonsu.

Defendant asserted the second driver's license found in the wallet belonged to his twin brother. However, the second driver's license had defendant's birthdate listed as January 1, 1991, making it impossible that the two licenses were those of twins, since the birthdate differed from the first driver's license produced. Additionally, Kimbro testified that the photograph on the license defendant first gave him did not resemble defendant "in any way, shape, or form" and the photograph on the second license looked like defendant.

Kimbro gave defendant a PIP personal information form to fill out to accurately identify himself. After being handed the form and prior to completing it, defendant told Kimbro, "Officer, I f---ed up. Can I talk to you?"

The officer told defendant to continue filling the form out. Defendant wrote on the form that his last name was Kwabena, first name Bonsu and initially listed his date of birth as March 7, 1989, though he subsequently crossed out March and wrote January before orally reverting to March when he went over the form with Kimbro.

When Kimbro entered the information defendant provided on the form into the computer for a records check, no record came back. However, when Kimbro called headquarters and provided the information on both driver's licenses, one for Kwabena Osei-Bonsu and the other for Kwabena Ohene-Bonsu, Kimbro was advised that defendant, Kwabena Ohene-Bonsu, had a suspended license for driving while intoxicated. Kimbro then placed defendant under arrest.

Under indictment No. 20-01-0140, defendant was charged with fourth-degree operating a motor vehicle during a period of license suspension, N.J.S.A. 2C:40-26(b), and fourth-degree obtaining the personal identifying information of another to assume that person's identity without authorization and with the purpose to avoid prosecution for a crime, N.J.S.A. 2C:21-17(a)(4). Defendant also received summonses for violating PIP regulations 411.1(k) and 411.1(w), as well as possession of a controlled substance, N.J.S.A. 2C:35-10(a)(4);

5

possession of drug paraphernalia with the intent to use, N.J.S.A. 2C:36-2; and two counts of hindering apprehension or prosecution, N.J.S.A. 2C:29-3(b)(4).

Defendant filed a motion to suppress evidence and dismiss the charges, claiming the second motor vehicle stop was unlawful. After the December 10, 2020 evidentiary hearing,[2] the court ruled orally and found Kimbro "had a reasonable and articulable suspicion to believe that [defendant] had committed a motor vehicle offense and that the stop was proper." The court found Kimbro's testimony that defendant was "going into the shoulder and driving over the line into the shoulder and continuing to drive in the shoulder" was credible. The court further found although defendant's alleged driving infraction was not captured on Kimbro's dashboard recording system, the lack of video was legally irrelevant in light of Kimbro's testimony.

The court concluded Kimbro's stop of the vehicle was lawful based upon Kimbro's observation of defendant's vehicle driving over the solid line onto the shoulder of the roadway. The court also determined the officers had probable cause to search defendant's vehicle based upon the smell of suspected marijuana emanating from the vehicle and from defendant's person when he exited the

---

[2] By consent of the parties, the evidentiary hearing also addressed the voluntariness of defendant's statements during the motor vehicle stop. No appeal was filed as to the admissibility of defendant's statements.

A-2240-21

vehicle. The trial court found that it was reasonable to search defendant's wallet, which was in plain view, to determine whether he had any controlled dangerous substances inside. Thus, the court entered a memorializing written order denying defendant's motion to suppress.

At the conclusion of the November 3 and November 5, 2021 trial, the jury found defendant guilty of operating a motor vehicle during a period of license suspension and not guilty of obtaining the personal identifying information of another. On February 3, 2022, the court sentenced defendant to the mandatory minimum term required by N.J.S.A. 2C:40-26(b) of 180 days incarceration, in addition to required fines and penalties.

Defendant appeals, raising only one argument:

> THE MOTOR VEHICLE STOP WAS UNLAWFUL BECAUSE THE PIP REGULATION ON WHICH THE STOP WAS BASED IS UNCONSTITUTIONALLY OVERBROAD.

Our review of a trial court's decision regarding a motion to suppress is limited. State v. Ahmad, 246 N.J. 592, 609 (2021). "Generally, on appellate review, a trial court's factual findings in support of granting or denying a motion to suppress must be upheld when 'those findings are supported by sufficient credible evidence in the record.'" State v. S.S., 229 N.J. 360, 374 (2017) (quoting State v. Gamble, 218 N.J. 412, 424 (2014)).

7

The reviewing court "ordinarily will not disturb the trial court's factual findings unless they are 'so clearly mistaken that the interests of justice demand intervention and correction.'"  State v. Goldsmith, 251 N.J. 384, 398 (2022) (quoting Gamble, 218 N.J. at 425) (internal quotation marks omitted).  However, legal conclusions drawn from those facts are reviewed de novo.  State v. Radel, 249 N.J. 469, 493 (2022).

The Fourth Amendment to the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution protect the right of individuals from unreasonable searches and seizures.  U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7.  The reasonable suspicion required to make a stop under the Fourth Amendment "is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, [but] the Fourth Amendment requires at least a minimal level of objective justification for making the stop."  Illinois v. Wardlow, 528 U.S. 119, 123 (2000).  Additionally, "[t]he officer must be able to articulate more than an 'inchoate and unparticularized suspicion or "hunch"' of criminal activity."  Id. at 123-24 (quoting Terry v. Ohio, 392 U.S. 1, 27 (1968)).

Similarly, the New Jersey Constitution requires "something less than the probable cause standard needed to support an arrest."  State v. Thomas, 110 N.J.

673, 678 (1988); State v. Citarella, 154 N.J. 272, 279 (1998). The officer must "'point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' the intrusion." Thomas, 110 N.J. at 678 (quoting Terry, 392 U.S. at 21). This is an objective standard. Ibid.

We are compelled to highlight at the outset that defendant does not dispute the lawfulness of the first stop accomplished by Busanic on October 15, 2019. Defendant was charged with driving with a suspended license in connection with both stops. Therefore, even if we were to find the second stop of defendant's vehicle by Kimbro did not comport with Fourth Amendment jurisprudence, the conviction for driving with a suspended license would not be constitutionally infirm based upon the lawfulness of the first motor vehicle stop.

Nonetheless, we turn to defendant's sole argument in his amended brief that the motion to suppress evidence obtained by Kimbro during the second stop should have been granted because PIP 411.1(k) is unconstitutionally overbroad. The State posits on appeal that defendant was stopped for and charged with violating both PIP 411.1(k) and (w). 411.1(k) provides that "no person shall cause or permit a motor vehicle to cross a solid longitudinal traffic line, except when directed to do so by an employee of the commission." Under 411.1(w), "no person shall drive a vehicle carelessly, or without due caution and

9

circumspection, in a manner so as to endanger or be likely to endanger, a person or property."

Defendant for the first time on appeal argues the trial court improperly failed to consider the constitutionality of the second stop through the lens of the overbroad application of PIP 411.1(k). We consider issues raised for the first time on appeal only if plain error is established. R. 2:10-2. Based upon our careful review of the proofs at the December 10, 2020 evidentiary hearing in tandem with prevailing law, we conclude defendant has failed to demonstrate plain error.

The proofs at the evidentiary hearing on defendant's motion to suppress, at which defendant did not testify, established that Kimbro had reasonable and articulable suspicion that defendant had violated PIP regulation 411.1(k) and (w), with which he was charged. Among the trial court's factual findings were that Kimbro testified credibly as to his observation of defendant's vehicle driving over the solid line on the right shoulder of the roadway and continuing to drive on the shoulder until he moved back into a driving lane. We decline to disturb the trial court's factual findings and credibility determinations as they are supported by the record at the evidentiary hearing.

Kimbro's testimony supports the conclusion that the stop was lawful since he had reasonable suspicion defendant had committed a traffic infraction based on his personal observation of defendant's vehicle crossing the solid yellow line and continuing to drive on the shoulder in violation of both PIP regulations. Observation of traffic violations can form the basis of reasonable and articulable suspicion to stop a vehicle. State v. Bacome, 228 N.J. 94, 103 (2017).

Defendant criticizes the lack of detail in Kimbro's testimony as to precisely how long the defendant was driving over the solid yellow line and argues that PIP regulation 411.1(k) was unconstitutionally applied to defendant based upon a "de minimis" violation. We conclude Kimbro's observation, deemed credible by the trial court, that defendant drove over the line and continued to do so constitutes sufficient reasonable and articulable suspicion of a violation of PIP regulations 411.1(k) and (w).

Ultimately, we reject defendant's argument that the stop was violative of the Fourth Amendment because the regulation which formed the basis for the stop was unconstitutionally overbroad. Kimbro's testimony establishes he had reasonable and articulable suspicion to believe that defendant was in violation of PIP 411.1(k) and (w) when he initiated the motor vehicle stop. The stop was, therefore, consistent with Fourth Amendment jurisprudence and the trial court

11

did not err in denying defendant's motion to suppress the evidence garnered from the resulting search.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2240-21