**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3780-23

STATE OF NEW JERSEY,

     Plaintiff-Appellant,

v.

JONATHAN E. LIGHTSEY,

     Defendant-Respondent.

_____

Argued January 14, 2025 – Decided April 8, 2025

Before Judges Sumners and Bergman.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Union County, Indictment No. 23-12-0850.

Michele C. Buckley, Assistant Prosecutor, argued the cause for appellant (William A. Daniel, Union County Prosecutor, attorney; Michele C. Buckley, of counsel and on the brief).

Scott M. Welfel, Assistant Deputy Public Defender, argued the cause for respondent (Jennifer Nicole Sellitti, Public Defender, attorney; Scott M. Welfel of counsel and on the brief).

PER CURIAM

On leave granted, the State appeals from an order suppressing controlled dangerous substances (CDS) seized by law enforcement following a stop and warrantless search of defendant Jonathan E. Lightsey's automobile. After our review of the record and applicable legal principals, we conclude, based on the totality of the circumstances, that the State satisfied its burden by a preponderance of the evidence that the automobile exception for the warrantless search applied. Therefore, we reverse.

I.

On December 6, 2023, a Union County Grand Jury returned an indictment charging defendant with second-degree possession of CDS, cocaine, with the intent to distribute, N.J.S.A. 2C:35-5a(1); third-degree possession of CDS, cocaine, N.J.S.A. 2C:35-10a(1); third-degree possession of CDS, fentanyl, N.J.S.A. 2C:35-10a(1); third-degree possession of CDS, fentanyl, with the intent to distribute, N.J.S.A. 2C:35-5a(1) and N.J.S.A. 2C:35-5b(3) and fourth-degree possession of drug paraphernalia with intent to distribute, N.J.S.A. 2C:36-3.

Defendant moved to suppress the CDS which was seized. At the suppression hearing, the State presented Elizabeth Police Officer Liam Kiniery as its sole witness. At the time of the incident, he had worked in the Narcotics

2                                                                   A-3780-23

Division for over a year and was involved in multiple narcotics investigations and arrests. He testified that on September 13, 2023, he was conducting narcotics patrol in an unmarked police vehicle with Officers Matthew Fonseca and Emmanuel Maglione in the area of Spring Street in Elizabeth, specifically in and around the parking lot of a convenience store which was located there. He stated during his patrol of the parking lot he observed a silver Infiniti with a Giants sunshade covering the front windshield parked between two box trucks. He believed the driver was "trying to disguise [the vehicle]" based on its location and due to "the way it was backed in between [the] two box trucks." He testified as he was circling the convenience store parking lot he noticed a female, known to the police as a narcotics user, engaging in a conversation with the driver of the vehicle.

Kiniery testified once the vehicle was parked, they observed a female handing the driver an unknown amount of currency in exchange for a small item suspected to be a hand-to-hand narcotics transaction. When asked why he did not stop the purchaser, he stated "we didn't want to jump the gun yet. We wanted to wait and observe more so we believe we had a good position, and we stayed within our non-descript vehicle." He also testified they "didn't have any backup

3                                                                                    A-3780-23

at that point. There weren't any narcotics detectives in the area." The only officers on scene at this time were himself, Fonseca, and Maglione.

Kiniery and the other officers continued to surveil the vehicle. He testified that approximately thirty minutes following observation of the first transaction, he witnessed another female exchanging currency with the driver of the vehicle in exchange for a small package. After this transaction, he ran the vehicle's license plate which revealed it was registered to defendant. Kiniery testified he "kn[e]w of [defendant]" based on a prior investigation where a search warrant had been issued and when they attempted to execute the search warrant, defendant "fled in his vehicle which caused several motor vehicle accidents." Kiniery decided not to "move in while [] defendant was inside the vehicle because we wanted to avoid a pursuit or putting any of the public in danger because that parking lot is very busy."

Kiniery said after observing the second transaction, it raised "a little suspicion" as to narcotics being located in the car and he called for backup. He testified "we had no backup" because the "office was a little short that day." About ten minutes later backup arrived and surveillance continued for approximately forty more minutes at which time a third female approached the vehicle, engaged in a transaction, and left the area in a maroon Jaguar sedan. He

A-3780-23

testified law enforcement's attempts to stop the Jaguar were unsuccessful due to heavy traffic. Kiniery testified about one hour and ten minutes had passed since he first arrived at the convenience store and his observation of the third transaction.

Shortly after the third transaction, defendant exited the vehicle. At this point, defendant was identified as the occupant. After exiting the vehicle, the officers observed a female approach and utter something to him and "they both looked in our direction and at our [] vehicle." Kiniery testified he "believe[ed] that our surveillance location was compromised." Defendant then walked across the parking lot and entered the rear entrance to the convenience store.

Kiniery stated upon defendant exiting the convenience store, officers moved in so to avoid defendant "entering the vehicle which, [sic] giving him an option to flee." Officers detained defendant approximately ten to fifteen feet from his car, handcuffed and placed him in the rear of a patrol vehicle. Kiniery testified that he and the other officers, then approached the vehicle, but were "unable to see if there were any other occupants." Based on his observations over the "prior hour and one-half or so," he believed narcotics were in the vehicle. He therefore opened the driver's side door of the vehicle where he observed suspected crack cocaine residue scattered on the front driver's seat.

5

Kiniery testified that he and the other officers recovered "about $660 in U.S. currency only, low denominations, consistent with street level narcotics dealing" from a search of defendant's person.  They also recovered twenty-five grams of alleged crack cocaine and sixty glassine envelopes allegedly containing heroin from defendant's vehicle.

On cross-examination, Kiniery testified that the report he prepared concerning the incident showed he was on the scene for approximately two hours.  He also admitted he ran the license plate of defendant's vehicle after he observed the first exchange, not the second.

The trial court rendered an oral decision granting defendant's motion to suppress the evidence seized from the search. The court found "Officer Kiniery to be very credible."  Yet, the court determined probable cause to search defendant's vehicle did not arise from "unforeseen and spontaneous circumstances" because the officers "surveilled the vehicle for over two hours" and "witnessed three separate transactions."  The court found the officers ran a license plate check and called for backup during this two-hour period.  The court stated:

> Like in State v. Smart[1], the search of [] [defendant's] vehicle was not justified by the automobile exception

---

[1] 253 N.J. 156 (2023)

because it was not unforeseeable or spontaneous. The officers went to that specific location because it was known as an open[-]air drug market. They had got[ten] information that they believed that [defendant] was the occupant or the driver of that car from somebody that they knew to be a drug addict, and they went to that area with the expectation that there may be drug activity taking place.

. . . .

Moreover, what's more concerning to the court is that the officers sat there for two or more hours, or almost two hours and watched the defendant allegedly engage in three separate hand-to-hand transactions over a two-hour period, despite the fact that there were numerous officers on scene. Had the officers approached the vehicle when they first observed the hand[-]to[-]hand transaction, it could have been considered unforeseen and spontaneous. However, the time in which the first transaction occurred until the time [] defendant was arrested could have used to secure a warrant for the vehicle. And further, the officers had the option to impound the vehicle once [] defendant was detained and to seek a warrant later. So, based on the above stated reasons, defendant's motion to suppress the evidence is granted.

The court entered an order reflecting its decision.

On appeal the State asserts the following point:

POINT I

THE TRIAL COURT ERRONEOUSLY SUPPRESSED THE EVIDENCE FOUND INDEFENDANTS VEHICLE INCORRECTLY FINDING THAT PROBABLE CAUSE WAS NOT

7

SPONTANEOUS AND UNFORESEEABLE, THUS, THE INTEREST OF JUSTICE DEMANDS THE STATE'S MOTION FOR LEAVE TO APPEAL BE GRANTED.

The State relies on our Supreme Court's decision in State v. Witt, 223 N.J. 409, 447 (2015), arguing the decision permits warrantless vehicle searches after investigative stops when probable cause arises from unforeseeable and spontaneous circumstances. The State argues the trial court's reliance on Smart was error because the facts there are distinguishable, and the trial court misinterpreted the law, resulting in an erroneous suppression of critical evidence.

The State further argues the trial court's finding that the circumstances forming probable cause to search was not spontaneous or unforeseeable was incorrect and the record clearly shows otherwise. The State asserts Kiniery's credible testimony reveals that officers encountered defendant's vehicle during routine patrol, without prior information about defendant's location, vehicle, or activities. The State contends the observations of suspected hand-to-hand drug transactions in a known drug area formed the basis for probable cause, which developed spontaneously as events unfolded. The State further asserts that the trial court's comparison to Smart is flawed, as the officers did not act on long-held information or conduct prolonged surveillance before engaging. Instead,

the circumstances leading to probable cause were reactive and unanticipated, aligning with the requirements for the automobile exception as outlined in Witt.

The State further argues that unlike in Smart, where police received extensive prior information connecting the defendant to drug activity and conducted prolonged surveillance before initiating a stop, the officers here encountered defendant's vehicle during a routine patrol without any prior knowledge concerning defendant or his activities. The officers observed the vehicle parked in a suspicious manner and, through their surveillance, witnessed what appeared to be hand-to-hand drug transactions. The circumstances that gave rise to probable cause to search in this case developed spontaneously and were unforeseeable, as the officers had no way of predicting that this particular defendant would engage in criminal conduct based on any previous information. Thus, the State argues that the officers' discovery of probable cause unfolded naturally over the course of their observations, unlike the premeditated and protracted investigation in Smart.

Furthermore, the State asserts the trial court's reasoning unduly constrained the investigatory demands of law enforcement, contrary to the principles articulated in Witt and Smart. The State asserts the court's conclusion that the officers continued surveillance to confirm its suspicions after viewing

the first transaction was not spontaneous nor unforeseeable was improper. The State argues this disregards Kiniery's testimony that the officers refrained from acting immediately to ensure their belief in the driver's involvement in narcotics distribution and to ensure the public safety was well-founded. Therefore, the State asserts the officers prudently waited for additional transactions and backup before taking action, given the potential dangers to the officers, defendant and the public based on defendant's prior history of fleeing and the logistical challenges posed by the lack of immediate support.

The State contends requiring officers to "jump the gun" after observing a single transaction would impose unreasonable limitations on effective policing and contradict the rationale underlying the automobile exception. In State's view, the trial court's approach, if applied broadly, risks eliminating the exception altogether by mandating premature stops before probable cause is fully developed.

In response, defendant argues

> the trial court correctly reasoned that probable cause was not spontaneous and unforeseeable where multiple narcotics officers went to the parking lot specifically to look for narcotics activity, they surveilled [him] over the course of two hours after recognizing he was the registered owner of the suspect vehicle—known to police from a previous search warrant, and they conducted a stop of [him] on foot ten to fifteen feet

away from his vehicle. Thus, the trial court's order suppressing the evidence should be affirmed.

## II.

"Generally, on appellate review, a trial court's factual findings in support of granting or denying a motion to suppress must be upheld when 'those findings are supported by sufficient credible evidence in the record.'" State v. A.M., 237 N.J. 384, 395 (2019) (quoting State v. S.S., 229 N.J. 360, 374 (2017)). Factual findings will not be disturbed on appeal unless they are "so clearly mistaken 'that the interests of justice demand intervention and correction.'" State v. Gamble, 218 N.J. 412, 425, 95 A.3d 188 (2014) (quoting State v. Elders, 192 N.J. 224, 244 (2007)). However, legal conclusions drawn from those facts are reviewed de novo. State v. Radel, 249 N.J. 469, 493 (2022); see also S.S., 229 N.J. at 380.

"'The Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution, in almost identical language, protect against unreasonable searches and seizures.'" Smart, 253 N.J. at 164 (quoting State v. Nyema, 249 N.J. 509, 527 (2022)). Warrantless searches are presumptively invalid because they are contrary to the United States and the New Jersey Constitutions, State v. Pineiro, 181 N.J. 13, 19 (2009), and "[t]he

warrant requirement . . . may be dispensed with in only a few narrowly circumscribed exceptions," State v. Patino, 83 N.J. 1, 7 (1980).

"To justify a warrantless search or seizure, 'the State bears the burden of proving by a preponderance of the evidence that [the] warrantless search or seizure falls within one of the few well-delineated exceptions to the warrant requirement.'" State v. Vanderee, 476 N.J. Super. 214, 230 (App. Div. 2023) (quoting State v. Chisum, 236 N.J. 530, 546 (2019)). Each exception to the warrant requirement has its own essential elements that must be satisfied to justify a warrantless search. State v. Johnson, 476 N.J. Super. 1, 20 (App. Div. 2023).

Under federal law, the automobile exception permits the warrantless search of a car if it is "'readily mobile' and the officer has 'probable cause' to believe that the vehicle contains contraband." Witt, 223 N.J. at 422 (quoting Pennsylvania v. Labron, 518 U.S. 938, 940 (1996)). New Jersey law authorizes the warrantless search of an automobile if the police "have probable cause to believe that the vehicle contains contraband or evidence of an offense and the circumstances giving rise to probable cause are unforeseeable and spontaneous." Witt, 223 N.J. at 447 (quoting State v. Alston, 88 N.J. 211, 233 (1981)); see also State v. Courtney, 478 N.J. Super. 81, 93 (2024). Further, that probable cause

did not exist "well in advance" of the search. <u>Smart</u>, 253 N.J. at 174. In <u>Smart</u>, the Court upheld the longstanding principle that the State must prove the ripening of probable cause was <u>both</u> "unforeseeable and spontaneous." <u>Id.</u>; <u>see also</u> <u>State v. Cohen</u>, 254 N.J. 308, 319-20 (2023) (emphasis added). This test represents "a sharp departure from a more narrow construction of the automobile exception previously adopted . . . ." <u>State v. Rodriguez</u>, 459 N.J. Super. 13, 21 (2019).

## III.

Applying the facts of this matter under this legal backdrop, we conclude the State's argument holds merit. The sole issue raised on appeal is whether the circumstances supporting probable cause for the warrantless search of defendant's vehicle based on the automobile exception was both unforeseeable and spontaneous. We conclude the State met these requirements by a preponderance of evidence when viewing the totality of the circumstances surrounding the search.

The trial court found Kiniery to be "very credible." He testified he was experienced in recognizing drug transactions and was first drawn to defendant's vehicle due to the suspicious manner which it was parked by facing out between two box trucks near an auto supply store adjacent to the convenience store

13

parking lot. He testified the convenience store parking lot was known as a high drug trafficking location. He asserted these factors prompted the lengthy approximate hour and one-half surveillance of defendant's car. Over this time, he witnessed three suspected drug transactions. He testified the first observation of a drug transaction was made within minutes from the start of his surveillance; the second was made approximately thirty minutes after the first and the third was made approximately forty-five to fifty minutes after the second transaction. The observation of these three suspected drug transactions formed the basis of the stop, defendant's detention, and the ultimate search of the car.

We determine the uncontroverted testimony of Kiniery provided undisputed evidence that the surveillance was not part of an ongoing investigation of defendant, nor had law enforcement been provided prior information about defendant before patrolling and parking their police vehicle to surveil the vehicle. He testified, while on patrol, he was drawn to the defendant's vehicle because it was parked in a suspicious manner and the convenience store parking lot was known as a high drug crime area. Unlike Smart, where the police were investigating the defendant based on information received one month prior from a confidential informant and a concerned citizen that related to narcotics dealing, see 253 N.J. at 159-160, here, law enforcement

A-3780-23

had not received any prior information about defendant distributing CDS from his vehicle. Therefore, up to this point, we conclude the circumstances giving rise to probable cause that defendant's vehicle contained CDS were unforeseen.

In support of its finding that the circumstances supporting probable cause were not unforeseeable nor spontaneous, the court found the convenience store parking lot was known by law enforcement as an "open-air drug market." The court further found that law enforcement received "prior information from somebody they knew to be a drug addict that defendant was the occupant, or the driver of the vehicle and went there with the expectation there may be drug activity taking place."

We find no legal support for the court's initial finding because probable cause arose through the officers engaging in a routine patrol in the convenience store parking lot, a high drug crime area, and therefore it was foreseeable defendant's vehicle contained CDS. The trial court utilized these circumstances to support its finding that the officer's had specific knowledge that defendant's vehicle contained CDS and therefore it was not unforeseeable. Nothing in the record supports the direct connection found by the court that because the officers were on patrol in a high drug crime area that they were aware defendant's vehicle contained CDS.

The court's consideration of this factor to support its finding of the officers' foreseeability was error. Although evidence concerning "the high-crime reputation an area" is permitted to be considered as part of the "totality of the circumstances test" in determining probable cause, see State v. Moore, 181 N.J. 40, 46 (2004), citing State v. Johnson, 171 N.J. 192, 217 (2002), the court's finding that this general knowledge that the convenience store parking lot is a high crime area somehow equates to specific knowledge that defendant's vehicle contained CDS was foreseeable misapplies the established legal principles of Witt and Smart. We conclude the automobile exception would be severely limited if the routine patrolling of high crime areas by law enforcement satisfied the foreseeability prong obviating probable cause to search a vehicle without a warrant under the automobile exception.

We further determine there is no factual support in the record to sustain the trial court's finding that "law enforcement received prior information from somebody they knew to be a drug addict identifying defendant as the occupant of the vehicle and went there with the expectation there may be drug activity taking place." Kiniery testified the first female who made an exchange with the occupant of the vehicle was a known narcotics user. The testimony was offered as evidence that the occupant of the vehicle was selling CDS to support

16

sufficient probable cause for the search, not that this information specifically identified defendant as the occupant of the vehicle. The record shows there was never an identification of defendant by a third-party adduced at the hearing. The record supports that defendant was identified once he stepped out of the vehicle and the officers obtained information from the license plate search that the vehicle was registered to defendant. Up until this time, there was no evidence law enforcement had sufficient probable cause or could foresee the vehicle contained CDS. Therefore, we conclude the court's finding was not supported by the record.

We turn now to the State's argument that, contrary to the trial court's determination, the record clearly shows that the information obtained during the officers' hour and one-half to almost two-hour surveillance provided probable cause to search defendant's vehicle that arose spontaneously and was unforeseeable and justified the warrantless search under the automobile exception. We agree.

The record demonstrates the first indication that defendant's vehicle contained CDS was the officers' observation of the first transaction shortly after they parked their vehicle. The court found if the officers would have detained and searched the vehicle after this observation it would have arisen from

17

probable cause that was spontaneous and unforeseeable. The court determined once the officers waited almost an additional two hours and observed two additional transactions before searching the vehicle that the probable cause supporting the search was no longer spontaneous and unforeseeable.

"In assessing whether probable cause exists, 'courts must look to the totality of the circumstances and view those circumstances . . . from the standpoint of an objectively reasonable police officer.'" State v. Diaz, 470 N.J. Super. 495, 529 (App. Div. 2022) (quoting State v. Gibson, 218 N.J. 277, 293 (2014)). "[C]ourts are to give weight to 'the officer's knowledge and experience' as well as 'rational inferences that could be drawn from the facts objectively and reasonably viewed in light of the officer's expertise.'" State v. Citarella, 154 N.J. 272, 279 (1998) (quoting State v. Arthur, 149 N.J. 1, 10-11 (1997)).

Our Court's holding in Witt addressed the automobile exception, stating:

> Here, we part from the United States Supreme Court's interpretation of the automobile exception under the Fourth Amendment and return to the Alston standard, this time supported by Article I, Paragraph 7 of our State Constitution. Alston properly balances the individual's privacy and liberty interests and law enforcement's investigatory demands. Alston's requirement of "unforeseeabilty and spontaneity," id. at 233, does not place an undue burden on law enforcement. For example, if a police officer has probable cause to search a car and is looking for that car, then it is reasonable to expect the officer to secure

18

a warrant if it is practicable to do so. In this way, we eliminate the concern expressed in State v. Cooke—the fear that "a car parked in the home driveway of vacationing owners would be a fair target of a warrantless search if the police had probable cause to believe the vehicle contained drugs." 163 N.J. 657, 667-68 (2000). In the case of the parked car, if the circumstances giving rise to probable cause were foreseeable and not spontaneous, the warrant requirement applies.

[Witt, 223 N.J. at 447-448.]

We agree with the State that requiring law enforcement to engage in an immediate stop and search of the defendant's vehicle after viewing one suspected transaction would place undue burden on the investigatory demands of law enforcement which Witt informs must be taken into consideration. Applying the trial court's findings, law enforcement would be placed in the unenviable position of deciding whether sufficient probable cause had been developed based on the observation of one possible drug transaction. In this instance, we agree with the officers' reasonable decision to not institute a stop and search of defendant and his vehicle after the first transaction. Again, at this juncture, when viewing these circumstances through the perspective of the officers, their belief that probable cause was not fully developed after the observation of one possible transaction was reasonable. In addition, at that point, the occupant of the vehicle had not been identified and although a

19

registration check revealed the vehicle was registered to defendant, no one was able to clearly view the occupant at that point to identify him. Therefore, the officers' concerns about potential danger to the public based on the prior information obtained concerning defendant and the need to take more time to potentially determine the occupant's identification was also reasonable.

It is undisputed that two additional transactions were observed by officers during the next approximate hour and thirty minutes and prior to the vehicle search. At that point, Kiniery believed there was some probable cause the occupant of the vehicle was distributing CDS and called for backup. Kiniery determined backup was necessary due to safety concerns for the onsite officers because he learned the vehicle was registered to defendant known to have been involved in a high-speed fleeing incident that caused several motor vehicle accidents. The officers also decided not to engage defendant while he was still in the vehicle due to these same concerns because it would put the public in danger as the convenience store parking lot was very busy.

Although we determine after the officers observed the second transaction that they had sufficient probable cause which was both spontaneous and unforeseeable to support a search of the vehicle, their decision to not engage defendant while he was in his vehicle was reasonable under the circumstances

20

based on the knowledge they obtained concerning defendant's previous eluding incident and the potential danger to officers and the public. After backup arrived approximately ten minutes later, and officers continued to surveil the vehicle. Approximately forty minutes later, another transaction was observed. This time, after the purchase, defendant exited the vehicle, and the suspected purchaser pointed out the unmarked police vehicle to him. At that point, because defendant had exited his vehicle, went into the convenience store, law enforcement was able to identify him and viewed three separate transactions, they decided to engage defendant. Thereafter, as defendant was exiting the convenience store, he was detained and searched, resulting in the confiscation of $660 and CDS.

Under these factual circumstances we conclude the officers again acted reasonably in waiting to determine if defendant would exit the vehicle so to avoid a possible eluding incident and danger to the public. We determine the officers had sufficient probable cause which arose spontaneously and was unforeseeable based on their observation of the second transaction. In addition, their seizure of the $660 in small denominations was made shortly before the search of the vehicle which we conclude was additional evidence of illegal CDS transactions which further support the spontaneous nature of the probable cause for the search. The passage of approximately fifty minutes caused by the

21

officer's decision that backup was required and to provide a reasonable amount of time to determine if the occupant would exit the vehicle due to safety concerns were not unreasonable. Nor can we conclude that this passage of time, in order to provide reasonable safety measures for the officers and public, vitiated the spontaneous and unforeseeable nature of the second transaction which was bolstered by the observation of a third transaction and the seizure of the $660 from defendant's person.

Defendant argues the trial court correctly found that the officers could and should have obtained a search warrant during the approximate two-hour surveillance. In the scenario before us, the concern that defendant would have fled at high speed in a crowded parking lot if the officers approached his vehicle after the second transaction was legitimate. We deem this factor is no less of a safety concern than a vehicle being stopped on a busy highway as alluded to in Witt. See 223 N.J. at 415. This is especially pertinent because defendant's vehicle was readily movable, and he was seated in the driver's seat at the time of the second transaction. Based on the totality of the circumstances, we conclude the approximate one-hour delay between viewing the second transaction and the search was appropriate and the decision by the officers not

22

to engage defendant and search his vehicle at that time was prudent and reasonable.

In sum, we conclude the warrantless search of defendant's vehicle was permitted under the automobile exception and the circumstances giving rise to probable cause for the search were both unforeseeable and spontaneous under the undisputed facts contained in the record.

Reversed and remanded for further proceedings consistent with this opinion.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-3780-23